CHARLES W. HUNTER, Plaintiff in Error, *v.* GEORGE H. SILVERS, Defendant in Error.

### ERROR TO MADISON.

A bond, signed by one party only, executed at the same time with a lease of premises for a year, which covenants that the lessee may have the privilege of renewing the lease for five years, with a privilege to him of purchasing the premises, &c., does not constitute a present demise of the premises for the extended time, which can be enforced in a court of law.

A party may, for a sufficient consideration, buy a right to lease or purchase premises, which he can enforce.

THIS cause was heard before UNDERWOOD, Judge, at August term, 1853, of the Madison Circuit Court.

This is an action of wilful detainer, brought by Hunter against Silvers, to get possession of property in Alton. Before the justice, a verdict was rendered for the defendant; from which an appeal was taken to the Madison circuit court. In that court a verdict was also rendered for the defendant, Silvers; from which last decision the plaintiff brings this suit to this court. In the court below the plaintiff, to sustain the issue on his part, showed a notice, in writing, given to Silvers on the 9th of April, 1853, requiring of him possession of the property described in said notice, and being the same in controversy. Also, two leases, which embrace the property, made by Hunter to Silvers, and under which he, Silvers, took possession; by which leases the said Hunter leased said property to Silvers for the term of one year from the first day of April, 1852, with covenants that Silvers would deliver quiet possession of the said property at the end of the term. Also, evidence to prove that Silvers was in possession of the property when he was served with the notice to surrender it, and that he still remains in possession.

It was proved by one Cooper, that Hunter had collected rent from Silvers after the first day of April, 1853, by virtue of a distress warrant, to the amount of between forty and sixty dollars. There was also offered in evidence by the defendant Silvers, which was objected to by plaintiff, but allowed by the court, a bond made by Hunter in the penal sum of five thousand dollars; which bond recited, " That whereas he, Hunter, had, on that day, made a lease of the hotel and garden at the corner of Second and Walnut streets, in Hunter's addition to Alton, with the stables and wagon yard inclosed in block No. 5, for the period of one year from April 1st, with the privilege of renewing the same, so as not to extend to more than five years from April 1, 1853, at $350.00 a year; conditioned that, on paying $1,000 a year for six years, with six per cent. interest, that Hunter would convey to Silvers the land described in the leases referred to ; the first thousand dollars to be paid on the first of April, 1853, with an additional amendment to the bond, that its terms were not to destroy or nullify the leases of the property between them, but that they were to stand and be fully complied with.

W. MARTIN, for plaintiff in error.

H. W. BILLINGS, for defendant in error.

CATON, J. There is one important question in this case upon which our decision must turn, and which demanded and has received the most careful consideration of this court. That question is, whether the bond which was introduced in evidence by the defendant, created a demise under which he could hold the premises after the expiration of the lease. The leases introduced by the plaintiff were in the ordinary form, and demised the premises in question to the defendant for one year, and contained covenants that the tenant should deliver possession at the end of the year. The defendant then introduced a bond, dated the same day with the leases, the condition of which is as follows: " Whereas I have executed this day a lease of the hotel and garden at the corner of Second and Walnut streets, in Hunter's addition to Alton, together with the stable and wagon yard inclosed in block No. 5, in said addition, for the period of one year from April 1, 1852, with the privilege of renewing the same, so as not to extend to more than five years from April 1, 1853, at the annual rent of three hundred and fifty dollars per year, and also the privilege of purchasing," etc., specifying the terms on which he might

purchase. This bond was signed by Hunter alone. Immediately under his signature is appended the following: " *Note.* It is agreed and understood by the parties to this agreement, that the terms of the within bond does not, nor is it intended that it shall, nullify or affect the leases of the property between the parties, but that said lease shall stand and be fully complied with." This is signed by both Hunter and Silvers.

All of these papers being executed at the same time, and relating to the same subject-matter, must be held to constitute but one contract. Nor is there any difficulty in understanding what was that contract. It was an absolute demise of the premises for one year, at a specified rent, with the right to the lessee to have the lease renewed, at the end of the year, for five years longer, with the right also of the lessee to purchase the premises at certain specified terms, and with a covenant by the lessee that he would deliver possession of the premises at the end of the first year which would terminate the lease. I see no objection to this right of renewal or right of purchase, for the want of a sufficient consideration. Those rights were in law granted by the same contract which granted the use and occupation of the premises, and the covenant to pay the stipulated rent was a consideration for the one as well as the other. The presumption is, that Silvers would not have agreed to pay that rent if all these rights had not been granted to him. A party may, for a sufficient consideration, buy a refusal or right to lease or purchase premises, as well as any other right, and when founded upon a consideration he may enforce such right.

But the question here arises, Was there a present demise for more than the one year ? Was there an actual lease for more than the one term specified. The very statement of the contract shows that there was not. There was a positive lease for one year, with a right to the lessee to have another lease of the same premises at the end of that year for a further term of five years. If by that contract the premises were leased for the five additional years, then the tenant by that contract agreed absolutely to pay the rent for that additional term. This is not pretended. He was only bound to take the premises and pay the rent for the one year. Beyond that he assumed nothing. An examination of all the cases relied upon by the defendant will show that where an agreement for a lease has been held to constitute a present demise, both parties have been bound by the agreement, that the lease should be actually executed. When both parties are thus bound, so that either could enforce it, it has been held to constitute a present demise, although the agreement may have contemplated the execution

Hunter *v.* Silvers.

of a formal lease.    Beyond this the authorities do not go.    We have met with no well considered case, where the agreement has left it optional with one party or the other to enforce the contract, and demand the execution of the lease or not, as he might choose, where it has been held to constitute a present demise, and entitle the party to insist upon it as such in a court of law.    Fenny *v.* Child, 1 Maule and Selwin, 262, is a very strong case of this character.    There was a lease for three years, with a covenant for renewal *toties quoties* during twenty-one years, and in the mean time and until such new leases should be executed the lessee should retain possession of the premises, and it was held that this was only a lease for three years, and that after that time the lessor could recover the possession in ejectment, there not having been any fresh lease granted.    That was certainly a much stronger case than this, for there was an express covenant that the tenant might retain possession till the new lease should be executed, and yet, as the tenant alone had the right to insist upon the renewal, the agreement to renew would not be treated as an actual renewal. There was no lease to compel the tenant to pay rent and to confer upon him the legal right to the possession.

In cases of this kind the party is not without his remedy, full and complete.    But he must see to it in a forum possessing the necessary powers to grant it.    He may apply to a court of equity for a specific performance of the agreement, and compel an execution of the lease, and in the mean time, if he is likely to be turned out of the possession, in violence of the agreement, the court may restrain the proceeding at law till the rights of the parties are fully settled in equity.    But now we are in a court of law, which cannot look to the equities of the parties, but must enforce their strict legal rights.    The judgment must be reversed, and the cause remanded.

*Judgment reversed.*