Syllabus.

𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

JAMES & OTHERS v. KIBLER'S ADM'R,

AND

KIBLER'S ADM'R v. JAMES & OTHERS.

December 17, 1896.

Absent, RIELY, J.*

1. LEASE—*Abandonment of contract by lessee—Action by lessor—Measure of damages.*—Where there has been an entire abandonment by a lessee of his contract of rent, and a refusal on his part to carry it out, the lessor may recover at once, before the expiration of his term, compensation for the injury sustained by breach of the contract, and the measure of his damage is the difference between what he would have received under his violated contract, and what he actually receives from a sale of the lease, either at a private or public sale fairly made.

2. LEASE FOR FIXED PERIOD—*Option to lessee to renew.*—A lease for a period of five years, with an option to the lessee to continue on the same terms for another period of five years, on giving six months' notice before the expiration of the first term, is not a present lease for ten years. The covenant to renew at the option of the lessee is not an actual renting for a longer term than the first period.

3. LANDLORD AND TENANTS—*Signing contract of lease—Refusal to enter—Sale of lease.*—The mere signing of a contract of lease by the lessor and lessee, without delivery of possession by the lessor, or entry of the lessee, does not constitute the relation of landlord and tenant. And if the lessee abandons his contract and refuses to carry it into effect the lessor may sell the lease and become the purchaser at the sale, and the lessee is bound for the resulting loss, if any. It is the duty of the lessor to relieve the lessee as far as possible from the consequences of his own default.

4. LEASE—*Action for breach of contract—Sale of lease—Burden of proof as to value of lease.*—If a lease is sold for the refusal of the lessee to carry out

* Judge Riely had been counsel in the court below.

his contract of lease, the burden is on the lessee, in an action for damages, to show that the lease did not bring its value. The amount obtained at a public sale fairly made, after due notice to the lessee, is *prima facie* the true value.

Error to a judgment of the Corporation Court of the city of Danville, in an action of assumpsit wherein James and wife were the plaintiffs, and Kibler's administrator was the defendant.

*Reversed.*

The plaintiffs were dissatisfied with the instructions of the court and the amount of their recovery, and the defendant contends that the plaintiffs were not entitled to recover at all, as he contended that the lease was for a period of ten years, and not being under seal was void, and hence each party applied for a writ of error which was awarded. The contract of lease was in the following words and figures:

### Lease.

"This deed, made this 5th day of July, in the year 1893, between Rorer A. James and Annie W. James, his wife, a married woman holding a separate estate, lessors and parties of the first part, and P. W. Kibler and P. B. Fetzer and E. R. Overman, lessees and parties of the second part, witnesseth that the said lessors, parties of first part, do demise unto the said parties of the second part, their personal representatives, and assigns, all that certain lot or parcel of land with the three-story brick and stone storehouse, to be erected according to specifications and contract with Graham Bros., architects, thereon, and appurtenances thereto belonging, on the north side of Main street, in the city of Danville, Va., and fronting on said Main street thirty-five feet, and running back 150 feet, being known as No. — on said street, from the 20th day of September, 1893, for the term of five years thence ensuing, yielding therefor, during the said term, the rent of three thousand dollars per year, payable in equal monthly in-

stalments of two hundred and fifty dollars per month, to become due and payable on the last day of each month; months being reckoned from the day on which said storehouse is ready for occupancy by said lessees.

"And it is agreed by and between the said parties hereto that if at the expiration of the said term of five years the said parties of the second part shall desire to retain the said lot and storehouse, with the appurtenances thereto belonging for five years next after the expiration of the said term of five years, the said parties of the second part shall have the power and right so to retain same on the terms, stipulations, and covenants herein expressed, touching the term of five years next ensuing the date hereof, provided six months' notice in writing is given by said lessees to said lessors of such intention and desire.

"The said lessors covenant for the quiet enjoyment to the lessees of their term, and covenant further to pay all taxes of whatever kind assessed against said lot and storehouse, and further covenant that they will give six months' notice in writing before the expiration of the said term of five years next ensuing the 20th of September, 1893, should they desire to regain possession of said premises and storehouse at the expiration of said term of five years, and said lessors further covenant that they will permit said lessees to have the shelves, counters and show-cases in said storehouse arranged and constructed as they may deem expedient and best.

"The said lessees covenant to pay the rent in the manner hereinbefore limited and appointed, except the said storehouse shall happen to be burnt down or damaged by fire, tempest or other casualty not occasioned by the default of the said lessees, or of their assigns, in either of which cases the said rent is either to cease or to be fairly apportioned according as the said destruction of the said storehouse is entire or partial. The said lessees further covenant that they will not assign without leave, that they will leave the premises in

Statement.

good repair, usual wear and tear excepted, that they will pay
the city gas and water bills for gas and water used in said
storehouse.    The said lessors further covenant and agree that
said storehouse shall be ready for occupancy on the morning
of September 20, 1893, if possible, and they further covenant
that unless the first floor and balcony of said storehouse is not
ready for occupancy on the morning of September 20, 1893,
then and in that event the said lessors bind themselves to pay
to the said lessees for the time after the morning of Septem-
ber 20, 1893, said first floor and balcony of said storehouse
remains unfit for occupancy at the rate of two hundred and
fifty dollars per month for such time, provided there shall be
deducted from such time all and every day rendered unfit by
the state of the weather for work to be carried on in the con-
struction of said storehouse.

"In testimony whereof we have hereunto affixed our hands
this 5th day of July, in the year 1893.

"It is further agreed and understood by and between the
parties to the writing above that, in consideration of the fact
that the said P. W. Kibler, P. B. Fetzer, and E. R. Over-
man, parties aforesaid, intend and desire to form a corpora-
tion duly chartered, &c., to be known as the Danville and
North Danville Mercantile and Manufacturing Company, and
that the said capital stock shall not be less than forty thousand
dollars, and that the said company's stock of goods shall be
deposited and kept in said brick-and-stone storehouse men-
tioned and described in the foregoing writing, the said
Rorer A. James and Annie W. James, his wife, a married
woman, holding a separate estate, hereby covenant and agree
that if said company is formed as aforesaid, and said amount
of capital stock is subscribed, and said goods are kept in said
brick-and-stone house, and further, if they, the said Rorer
A. James and Annie W., his wife, as aforesaid, are satisfied
with the security furnished by the amount of capital stock
and the stock of goods of the said Danville and North Dan-

ville Mercantile and Manufacturing Company, they will re-
lease said Kibler, Fetzer and Overman, parties aforesaid, from
the terms and covenants of the said lease, dated July 5, 1893,
and will lease said premises and storehouse, and the appur-
tenances thereto belonging, directly to the said Danville and
North Danville Mercantile and Manufacturing Company after
two years has expired.

"Witness our hands, this 5th day of July, 1893.

"DANVILLE AND NORTH DANVILLE MF'G CO.,

"P. W. KIBLER (President),

"P. W. KIBLER,<br>
"P. B. FETZER,<br>
"E. R. OVERMAN,<br>
"R. A. JAMES,<br>
"ANNIE W. JAMES.

"Witness as to P. B. Fetzer, B. E. Harris.

"Memorandum.—It is understood that said lessees in above
contract are to furnish at their own expense all show-cases to
be used in said storehouse.

"P. B. FETZER by OVERMAN,<br>
"E. R. OVERMAN,<br>
"P. W. KIBLER."

After the evidence was all in, the plaintiffs asked the court
to instruct the jury as follows:

"The court instructs the jury that if they believe from the
evidence in this cause that the defendant's intestate entered
into the contract of lease in writing, whereby the lessees were
bound to take the premises from the plaintiffs at $250 a
month for a term of five years, from September 20, 1893, and
that said lessees refused to comply with their said contract;
and that thereafter, upon due notice to the said defendant of
their intention so to do, the said plaintiffs leased the said
premises at public auction to the highest bidder, and that at

said auction the same brought, at the highest bid, $120.83⅓ per month, leaving a monthly deficit of $129.16⅔ from and after the date of said auction, February 1, 1894, then the amount the plaintiffs are entitled to recover is the agreed rent of $250 a month up to February 1, 1894, subject to such credit and deduction as under the contract and upon the evidence they shall find due and payable for the failure to have the storehouse ready for occupancy on September 20, 1893, the costs and expenses of such auction, and such amount as the present value as of February 1st, 1894, of the several sums of $129.16⅔, payable on the last day of each month, up to and including August 31, 1898, and such part of $129.16⅔ as would become due on September 20, 1898, calculated by proper mathematical rule therefor."

But the court refused to so instruct the jury, and the plaintiffs excepted.

The defendant then asked the following instruction:

"The court instructs the jury that if they believe from the evidence that the plaintiffs are entitled to damages, then the finding must be for the sum of $250 per month from the 1st day of November, 1893, to the 1st day of February, 1894, and from the 1st day of February, 1894, to the 31st day of March, 1894, for the sum of $129.16⅔ per month, less the sum to be deducted for the time the house in question remained not ready for occupancy."

The plaintiffs objected to the giving of this instruction, but the court overruled the objection and gave the instruction as asked, and the plaintiffs excepted. The defendant also asked the following instruction:

"The court instructs the jury that if they believe from the evidence that the lease or term in question was put up and sold at public auction on the 1st day of February, 1894, in pursuance of the notice and advertisement shown to the jury, and that at said auction R. A. James, one of the lessors named in said writing of lease and one of the plaintiffs in this

suit, bid in and purchased said lease or term, then the said plaintiffs are only entitled to damages at the rate of two hundred and fifty dollars per month from the date the storehouse in question was ready for occupancy to the date of said auction, less the amount due under said contract for the time the said storehouse was not ready for occupancy."

But the plaintiffs objected thereto, and the court sustained their objection, and the defendant excepted.

There was a verdict for the plaintiffs for $842.37. Both plaintiffs and defendants moved the court to set aside the verdict, but the court overruled the motions and both parties excepted.

*Berkley & Harrison*, for James and wife.

*Peatross & Harris* and *A. J. Montague*, for Kibler's administrator.

HARRISON, J., delivered the opinion of the court.

The plaintiffs leased certain real estate to the defendant's intestate and others for a specified period, the lessees agreeing to pay therefor an annual rental of three thousand dollars, payable in monthly instalments of two hundred and fifty dollars. The lessees not having taken possession of the demised premises, the plaintiffs gave them notice that the premises were ready for their use and occupation. This notice being disregarded, they were notified in writing that unless they complied with the terms of the contract of lease on or before a certain day named in the notice, the lease would be put up at public auction, after due advertisement, and the lessees held chargeable to the plaintiffs for all costs, damages, and deficit, if any, between the contract and what could be obtained at the sale. No attention being paid to this notice, the lease was duly sold at public auction, and one of the plaintiffs being the highest bidder, became the purchaser at $1,450 per annum, or $120.83⅓ per month, leaving a deficit of $1,550.00 *per annum*, or $129.16⅔ per month. Thereupon the plaintiffs

brought this action to recover as damages the sum that would have been due as rents at the date of the auction sale, and the value at that date of each future monthly deficit of $129.16⅔, and costs and expenses of sale, as the just measure of compensation due from the lessees for their total breach of the contract.

There is filed with the declaration a bill of particulars showing the present value of each monthly deficit to the end of the lease, ascertained according to well established rules, and the other items of damage claimed, the whole aggregating $6,739.33⅓ as of the date to which the calculation is made.

The question presented is whether the plaintiffs are entitled to recover damages *in solido* for the breach of the contract, or whether they can only recover the amount of deficit due under the contract at the date of the judgment.

The plaintiffs asked for an instruction covering the former view which was refused, and in lieu thereof one was given on behalf of the defendant embodying the latter view.

The court below seems to have regarded the plaintiff's action as one to recover instalments of rent falling due under an existing and continuing contract, rather than as a suit to recover damages for the complete breach of a contract.

There was an entire abandonment of the contract by the defendant, a refusal on his part to carry it out. He stood by, after due notice in writing, and acquiesced in the lease contract being sold at public auction, fully informed that he would be held responsible for whatever difference there might be between the price obtained at the auction sale and that which he contracted to pay. In such a case the plaintiff is not entitled to recover for rent of the premises, but he has compensation for the injury sustained in consequence of the breach of the contract, and his measure of damage is the difference between that which he was to receive under the violated contract, and that which he does receive from the purchaser of the lease at either a private or public sale fairly made.

Where the wrongful act of the defendant is of such a nature as to constitute an entire breach of the contract, compensation therefor may be recovered at once for the whole loss, though the consequence be a continuing one, if the future damage resulting therefrom can be ascertained with certainty. Sutherland on Dam., sec. 121; Sedgwick on Dam., sec. 90; *Remlee* v. *Hall*, 31 Vermont 582; *James* v. *Allen Co.*, 44 Ohio St. 226.

In the case at bar the future damage accruing to the plaintiff each succeeding month, is easily and certainly determined by simply subtracting one ascertained sum from another, and reducing each of the several sums thus obtained to its present value by well settled rules prepared for the purpose.

The instruction asked for by the plaintiff was based upon the evidence in the case, and correctly directs the jury how to estimate the damages, and is otherwise in accordance with the plaintiffs' rights, and should have been given.

The defendant contends that the lease contract shows no maintainable cause of action, that it is a present demise for ten years, and not being under seal is void under the statute of conveyances. (Sec. 2413, Code.)

The demise is for a specified period of five years, followed by this provision, which is relied on by the defendant to support his position: "If at the expiration of the said term of five years the said parties of the second part shall desire to retain the said lot and storehouse, with the appurtenances thereunto belonging for five years next after the expiration of the said term of five years, the said parties of the second part shall have the power and right so to retain same on the terms, stipulations, and covenants herein expressed touching the term of five years next ensuing the date hereof, provided six months notice in writing is given by said lessees to said lessors of such intention and desire."

This clause is in the form usually employed in lease contracts, where the lessee desires to secure the privilege of a

second term.   It is not a present demise of the premises for ten years, but an option to renew the lease, a mere covenant or undertaking to let the lessee have an additional term of five years upon the condition that he signify his election by six months notice in writing.   The very statement of the contract shows that there was a lease for only five years, with a right to the lesssee to have another lease at the end of that time if he desired it, upon condition that he give the notice.   A mere covenant to renew a term at the option of the lessee is not an actual renting for a longer period than the term specified.   Gear on Landlord and Tenant, secs. 10-27; *Hunter* v. *Silvus*, 15 Ill. 174; *Sutherland* v. *Goodnow*, 108 Ill. 528.

It is further contended on behalf of the defendant that the lessors in making sale of the lease were acting as agents of the lessees, and for this reason could not bid or become purchasers at the sale, and that, inasmuch as one of them became the purchaser, it was equivalent to a re-entry on the leased premises by both, and that this act of re-entry disentitled them to recover anything more than the rent due at the time of sale.

The fallacy of this position is found in the mistaken notion, manifest throughout the case, that the relation of landlord and tenant existed between the plaintiffs and defendant.   No such relation existed.   The mere signing of an agreement does not establish that relation, although it may create a right of action for damages for a breach of the contract, or for a specific performance of it.   The defendant had never taken any possession under his contract, but had broken and abandoned it long before the sale.   The plaintiffs had never been out of possession, and hence there could be no re-entry.

As to the position now taken, for the first time so far as appears from the record, that the plaintiffs were acting as agents of the defendants in making the auction sale and therefore could not buy, it must be observed that it was the duty

of the plaintiffs to minimize the amount due them as damages, so as to relieve the defendant as far as possible from the consequences of his own default. It is not pretended that the price obtained was not a fair and full one. The sale was made with the knowledge and acquiescence of the defendant, and it may be fairly presumed that the price otained was satisfactory, as no objection appears to have been made. The principle relied on that a man cannot be both buyer and seller has no application in a case like this. The amount secured at the sale is *prima facie* the true value, but it is not conclusive if for any reason it can be made to appear that the sale was not fairly made. . The sale is a means adopted for protecting the defendant as far as possible from loss, and for the purpose of ascertaining the amount of damage due the plaintiffs. Its results were only used on the trial as evidence on behalf of the plaintiffs tending to establish the damages they were entitled to recover. If it was not a correct estimate of the credit the defendant was entitled to, it should have been overcome by evidence on his behalf showing that he was entitled to a larger credit, and it would have been for the jury to determine that issue between the parties. No evidence was introduced by the defendant on the subject, from which it must be presumed that he was unable to establish any greater estimate of credit than that fixed by the evidence of the plaintiffs.

The defendant has waived at bar his contention that there was a mis-joinder of parties plaintiff, and it is therefore unnecessary to consider that assignment of error.

For the foregoing reasons the judgment of the lower court must be reversed, the verdict of the jury set aside, and the cause remanded for a new trial to be had therein in accordance with the views expressed in this opinion.

*Reversed.*