Syllabus.

𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

THE GREAT ATLANTIC AND PACIFIC TEA CO. V. J. H. COFER.

April 6, 1921.

1. LANDLORD AND TENANT—*Receipt of Rent by Landlord—Agent of Landlord Erroneously Acknowledging Receipt of Check which was Subsequently Returned.*—A tenant notified the purchaser of leased property that it had decided to renew its lease at the expiration of the year on the terms provided by its contract. The purchaser notified his agent not to accept rent after the expiration of the year, as he intended to contest the tenant's right to renew the lease under the contract, and the agent accordingly instructed his office force. Notwithstanding these instructions, a clerk of purchaser's agent accepted a check for the rent for January following the expiration of the term and forwarded a receipt to the tenant. The error was discovered at once, and the tenant was advised by letter, and the check was returned uncollected, with a request for the return of the receipt.

  *Held:* That under the circumstances the rights of the parties were in no wise affected by the erroneous acknowledgment of receipt of the subsequently returned check.

2. LANDLORD AND TENANT—*Recording Acts—Lease for Two Year Term with Privilege for Four Successive Renewals of the Lease.*—Sections 2465 and 2463 of the Code of 1904 provide that every contract in writing for the conveyance, or sale of real estate, or of a term therein of more than five years, shall be void both at law and in equity, as to purchasers for valuable consideration without notice, until and except from the time it is duly admitted to record.

  *Held:* That an indenture containing a demise of property for two years and one month, with the privilege to the lessee at his option of four successive renewals, each for a period of one year, is not a lease for more than two years and one month, but is a contract for a term of more than five years, and must be recorded to protect the lessee against purchasers for value without notice.

3. LANDLORD AND TENANT—*Recording Acts—Lease for Two Year Term with Privilege for Four Successive Renewals of the*

*Lease.*—By an indenture containing a demise of property for two years and one month, with the privilege to the lessee at his option of four successive renewals, each for a period of on year, the lessor definitely parted with the control of his property for the full period to which the instrument related. Hence the paper constitutes a single contract giving the lessee a demise and four options, and is not four several contracts of option.    And a contract which provides an actual demise of real estate for two years and one month, and the means by which the lessee's enjoyment of the premises can be extended for four years more, is a contract for a term of more than five years in real estate and, as against a subsequent purchaser for value and without notice, must be recorded.

4.  INSTRUCTIONS—*Must be Based on the Evidence.*—An instruction, though containing a correct pronouncement of law, is properly refused where there is no evidence in the case to sustain it.

5.  LANDLORD AND TENANT—*Acceptance of Rent—Ratification of Renewal Contract.*—Plaintiff, a purchaser of real property, was aware that defendant had a lease on the property expiring December 31, 1919, but disclaimed knowledge of defendant's privilege of four successive renewals of one year each. The demise until December 31, 1919, was good against the purchaser whether the contract for the renewals was sustained or not.    Hence, in accepting rent under the demise, the purchaser did not validate the contract for the renewals.

6.  LANDLORD AND TENANT—*Recording Acts—Lease for Two Years with Privilege of Renewals—Validity of the Two Year Term.*—A contract for the lease of real property made a present demise for a term of two years and a month, with privilege to the lessee of four successive renewals for a period of one year each.

*Held:* That the demise for two years and one month should not be considered void, because not recorded, as to a purchaser. It is only when the lessee, using that demise and the provision for renewals in conjunction, asserts a right to a term of years in the premises in excess of five years, that his contract is required to be recorded to be effective against a purchaser for value. If not recorded, then with respect only to his claim for a term greater than five years should the contract be considered as avoided as to such purchaser.

7.  LANDLORD AND TENANT.—*Void Renewal Contract—Validity of Original.*—A covenant for renewal may be void, and therefore fall, without impairing the original term.

81

8. LANDLORD AND TENANT—*Purchase from Landlord—Notice of Tenant's Rights.*—In an action of unlawful detainer against a tenant by a purchaser from the landlord, where the purchaser disclaimed knowledge of the terms of the tenant's unrecorded contract providing for successive renewals of one year each, the question of whether or not the purchaser when he purchased the property had knowledge of such facts as would have put a reasonably prudent man on inquiry as to the contents of the lease, was for the jury, and in the instant case, under the evidence, there was no reason to disturb a verdict of the jury for the purchaser.

9. NOTICE—*Constructive Notice — Duty of Inquiry — Purchaser.*— Constructive notice imposes upon a purchaser such inquiry as is suggested by the facts which are known or disclosed in the transaction. But to affect a party with notice of the fact with which he is sought to be charged, whether he made inquiry or not, he must have had knowledge of facts and circumstances naturally calculated to excite suspicion in the mind of a person of ordinary care and prudence, and which would naturally prompt him to pause and inquire before consummating the transaction. Moreover, discovery of the fact should necessarily follow from· the inquiry once embarked upon.

10. LANDLORD AND TENANT.—*Purchaser from Landlord—Notice of Contents of Tenant's Lease—Case at Bar.*—Plaintiff, a purchaser of real property, was aware that defendant had a short time lease on the premises; that this lease expired on December 31, 1919; that there were no recorded liens against the property; that the lease probably was in writing; that the vendor had covenanted that he had done nothing to incumber the land; and that it was not customary for a purchaser who has been informed by a reputable real estate dealer of a short time lease, expiring with the current year, to ask to see the lease.

*Held:* That there was nothing in these facts to furnish a reasonable and natural clue to a paragraph in defendant's lease containing a privilege for successive renewals of the lease.

Error to a judgment of the Corporation Court of the city of Norfolk, in an action of unlawful detainer. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Willcox, Cooke & Willcox,* for the plaintiff in error.

*E. R. F. Wells,* for the defendant in error.

SAUNDERS, J., delivered the opinion of the court.

This was an action of unlawful detainer brought by J. H. Cofer (defendant in error) to recover possession of certain premises on Granby street, Norfolk, Virginia, alleged to be unlawfully detained by The Great Atlantic and Pacific Tea Company (plaintiff in error). The jury trying the case, after hearing the evidence and being instructed as to the law, returned a verdict in favor of the plaintiff, which the court refused to set aside. The case is brought before us by a writ of error to the judgment of the trial court.

The plaintiff in error, The Great Atlantic and Pacific Tea Company (defendant below and hereinafter referred to as the Tea Company), makes three assignments of error:

First: The giving of the instruction requested by the plaintiff;

Second: The refusal of four instructions requested by the defendant;

Third: The refusal of the trial court to set aside the verdict.

The pertinent facts are as follows: One J. Frank East was the owner of certain real estate on Granby street, in Norfolk. On November 24, 1917, he entered into a written lease of a portion of this property with the Tea Company. This paper in part was as follows:

"The said lessor has leased, and by these presents does grant, demise and lease unto the said lessee" (the Tea

Company) "all that," etc., etc.    (Here follows the description of the property leased.)

"To have and to hold the same for a term of two years and one month, to begin December 1, 1917, and to end December 31, 1919, at," etc.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"The lessee at its option shall be entitled to the privilege of four successive renewals of this lease, each such renewal to be for a period of one year, to be subject to all the terms and conditions of this lease.    \*    \*    \*"

This lease was under seal but never recorded. The lessee entered and took possession of the premises under the terms and provisions of its lease.   On March 28, 1919, East executed an agreement with one J. H. Cofer, subsequently the plaintiff in the aforesaid action of unlawful detainer, for the sale of his Granby street property, including that portion leased to the Tea Company.   In this agreement of sale it was provided, among other things, that "the taxes on said property for the year 1919, and the rents from the same, are to be apportioned between the parties as of the day of settlement above named" (May 1, 1919).

Cofer bought this property through one R. L. Forrest, agent of the vendor, East.   The agreement of sale was consummated on May 1, 1919, on which date East and wife conveyed the property to Cofer.   This conveyance contained a covenant that the grantors had done nothing to encumber the land.   After completing his purchase, Cofer employed Hoggard & Co. to collect his rents.   In June, 1919, Hoggard at the direction of Cofer informed the Tea Company that its lease expired on December 31, 1919, and that it would be expected to vacate on that date." At the same time the company was advised that it could secure a further lease of the premises at $75.00 a month.   Receiving no reply to this letter Hoggard wrote again, asking the company if it desired a new lease on the terms submitted.

In reply to this inquiry the superintendent of the Tea Company called Hoggard's attention to the fact that it had "a lease containing a clause affording the privilege of four renewals for one year each," and that under such circumstances the company "would not consider favorably the proposition to increase the rental to $75.00." This letter and the lease of the Tea Company were at once submitted to Cofer by Hoggard.

[1] In November, 1919; the company wrote to East in care of Hoggard, that it had decided to renew its lease on the premises on Granby street for the term of one year from January 1, 1920, on the terms provided by its contract, and that it reserved its "rights with respect to the remaining three options." This letter was also submitted to Cofer. During the period of this correspondence, and for the month of December, 1919, the monthly rent due by the company was paid to and receipted for by Hoggard, the agent of Cofer. When the latter was advised that the company refused to vacate his property, and was claiming the right to hold the same under its lease, he notified his agent, Hoggard, not to accept any rent after December 31, as he proposed "to take the matter up with his attorney and make a contest." Hoggard & Co. instructed their office force not to accept any checks from the Tea Company for rent after December 31, 1919. The Tea Company sent a check for January, 1920. By mistake of a clerk in the office of Hoggard & Co., this check was accepted and a receipt therefor forwarded. The error was discovered at once, and the Tea Company so advised by letter. The check was returned uncollected, with a request for the return of the receipt. This was not done. Under the circumstances, the rights of the parties were in no wise affected by the erroneous acknowledgement of receipt of the subsequently returned check.

The Tea Company refusing to surrender Cofer's property, the latter brought an action of unlawful detainer on

January 12, 1920, to recover the same. Upon the trial of the issue the jury returned a verdict for the plaintiff, which the trial court declined to set aside.

The plaintiff in error complains of the following instructions given at the instance of the plaintiff:

"The court instructs the jury that under the law the lease offered in evidence should have been recorded and is void as to J. A. Cofer, unless they believe from the evidence that at the time of his purchase he had knowledge of such facts which would put a reasonably prudent man on inquiry as to its terms."

The plaintiff in error objects to that portion of this instruction which tells the jury that the lease should have been recorded, contending that it is in conflict with *James* v. *Kibler*, 94 Va. 165, 26 S. E. 417, and *Marks* v. *Goria Bros.*, 121 Va. 491, 504, 93 S. E. 675.

[2] In view of this contention, a critical examination has been made of the cases cited, and of the contract of lease in issue. It will be noted that this contract, which has been cited, *supra*, makes in part an actual demise of the premises for a term of two years and one month, to end December 31, 1919, and in further part provides that the lessee, at its option, shall be entitled to the privilege of "four successive renewals of the lease." Each of such renewals was to be subject to all the terms and conditions of the lease. Hence, this instrument achieves a double purpose—first, it affords a distinct and complete demise of the premises for a term of two years and a month; second, it relates to and provides for, at the option of the lessee, an extension of the term of the demise.

Sections 2465 and 2463 of the Code of 1904, read together, provide that every contract in writing for the conveyance, or sale of real estate, or of a term therein of more than five years, shall be void both at law and in equity, as to

purchasers for valuable consideration without notice, until and except from the time that it is duly admitted to record.

The right of the lessee in this case to hold his actual demise against the purchaser is not challenged; but the former essays to hold beyond the term of this demise. The contract provides the means by which the lessee at his option can extend the term of the demise so that the maximum aggregate of the term and the extensions will be six years and one month. In that respect, the contract is one for a term in real estate of more than five years. But a contract for such a term, as we have noted, *supra,* is required to be recorded to protect the lessee against purchasers for value without notice.

In *James* v. *Kibler, supra,* the question for decision was whether a written paper making a lease for five years, with an option for the lessee to continue for another five years, was a present lease for ten years. Obviously it was not, and the court so held. A contract for a lease, and an actual present demise are essentially different. Judge Harrison notes this distinction in *James* v. *Kibler,* when he declares that: "A mere covenant to renew a term, at the option of the lessee, is not an actual renting for a longer period than the term specified."

Hence the paper under consideration is not a leaase for more than two years and one month, by virtue of the authority of *James* v. *Kibler;* but it constitutes a contract binding on the lessor, under which the lessee can hold the leased premises for an aggregate in excess of five years. The question may be well asked, if this is not a contract for a term of more than five years in real estate, what is it?

The case of *Toupin* v. *Peabody,* 162 Mass. 473, 39 N. E. 280, is very similar in its facts to the case in judgment. The owner of the property in that case leased it to one Toupin for a term of five years, with the privilege of a further term of five years. This instrument was not re-

corded. Thereafter he sold the property to Peabody. A contest arose between the latter and Toupin over the possession of the premises. The question presented for decision was the effect of the provision furnishing the privilege of renewal. Under the Masachusetts law, a present term of seven years or less is good without recordation, but an instrument providing for a term in excess of seven years is required to be recorded. The court held as follows: "It is enough for the purpose of this' case to hold that as to any extension, or second term, or agreement or renewal, which will carry the possession of the lessee to more than seven years from the making of the instrument, every instrument which confers an estate for years is within the meaning of the statute. The instrument on which the plaintiff relies was of this nature, and so far as it purported to give him the right to a second term of five years, it was invalid as against a purchaser without actual notice."

[3] Analyzing the indenture in the instant case, it is perceived to be a contract by which the lessor has definitely parted with the control of his property for the full period to which the instrument relates. Hence we conclude that this paper is a single contract giving the lessee a demise and four options, and is not four several contracts of option as contended by the defendant. But a contract which provides an actual demise of real estate for two years, and one month, and the means by which the lessee's enjoyment and possession of the premises can be extended for four years more, is certainly a contract for a term of more than five years in real estate and as against a subsequent purchaser for value and without notice, must be recorded. The case cited *ubi supra* supports this conclusion. The first assignment of error is not considered to be well taken.

The second assignment of error is the refusal of the court to give four instructions submitted by the defendant.

The first of these instructions is the converse of the instruction just considered; hence, if that was correct, its converse was not, and was properly rejected by the court.

Instruction No. 3 as tendered is as follows: "The court instructs the jury that even if the plaintiff did not have notice of the defendant's lease, yet if they believe from the evidence that he ratified it after he did know of it, they must find for the defendant. Acceptance of rent after notice is a sufficient ratification. Notice to the agent of the plaintiff is notice to him."

[4-6] This seems to be, abstractly speaking, a correct pronouncement of law, but upon the evidence in the instant case, it was correctly refused. There is no evidence whatever that the plaintiff ratified the lease as a whole after knowledge of its existence. Nor did his acceptance, after notice, of rent for the remainder of the term constitute a ratification. Plaintiff was aware at the date of his deed that the defendant had a lease expiring December 31, 1919. It was a part of his contract of purchase that he was to receive the rents under this demise from May 1, 1919, to the end of the year. This demise was good against the purchaser whether the contract for the term of six years and one month was sustained or not. Hence, in accepting rent under the demise, the purchaser did not validate the six year contract. As soon as Cofer was advised of the defendant's claim that it could hold the property beyond December 31st, and proposed to do so, he advised his agents that he intended to resist this claim, and not to receive any rent beyond December, 1919. He had already, of date of June 14, 1919, advised the Tea Company that their lease would expire at midnight Dec. 31, at which time they were expected to vacate the premises, unless a new lease was effected. Under these circumstances the receipt of rent for the balance of the year, 1919, did not ratify defendant's lease as a whole, and establish its claim to a six year term.

82

The Masachusetts court, in the case of *Toupin* v. *Peabody,* *supra,* declined to decide whether an instrument making a present demise for a term of less than seven years, and providing for a further term which with the present demise would exceed seven years from the making of the instrument, would be wholly void as to a *bona fide* purchaser, without actual notice, or whether it might be good for the demise of less than seven years. This same question arises in the instant case, since the contract makes a present demise for a term of two years and a month, and provides for a further term, the aggregate being in excess of five years. The demise for two years should not be considered void. It is only when the lessee using that demise and the provision for renewals in conjunction, asserts a right to a term of years in the premises in excess of five years, that his contract is required to be recorded to be effective against a purchaser for value. If not recorded, then with respect only to his claim for a term greater than five years should the contract be considered as avoided as to such a purchaser. This view of the contract strengthens our conclusion that acceptance of rent for the present term which the contract provided did not establish the defendant's right to the renewals, and relieve it from the necessity of recording the instrument under which it claimed. This was the conclusion of the trial court, as appears from its written opinion, and in that conclusion we find no error.

Instruction No. 5, of the rejected instructions, is in these words: "The court instructs the jury that a tenant who enters or holds possession of property under a void lease is a tenant at will until he pays and the owner accepts payment of rent. In this case, if they believe from the evidence that the plaintiff had no notice of the defendant's lease when he acquired title, but accepted rent from it for an aliquot part of a year, then the defendant became a

tenant from year to year, and they must find for the defendant."

[7]    From the conclusion announced, *supra*, it follows that the lessee neither entered nor held under a void lease. Both parties operated under a demise that was valid. They collided, so to say, over another claim of the defendant, to-wit: his claim to a term in excess of five years. In that respect it is considered that the indenture of leasing is required to be recorded to be good against a purchaser without notice. A covenant for renewal may be void, and therefore fall, without impairing the original term. Gear on Landlord and Tenant, par. 102; *Hart* v. *Hart*, 22 Barb. (N. Y.) 606.

[8]    Instruction No. 5 was properly refused.

The last of the rejected instructions is No. 4, which is as follows: "The court instructs the jury that if they believe from the evidence that the plaintiff had actual knowledge at the time he purchased the property that the defendant had a lease for a portion of it, then he is charged with constructive knowledge of all the terms and conditions of said lease, and they must find for the defendant."

This instruction will be considered in connection with the third assignment of error, to-wit, the refusal of the court to set aside the verdict, and also with the concluding sentence of the instruction actually given, namely, that the defendant's lease was void as to Cofer, unless the jury believed "from the evidence that at the time of his purchase he (Cofer) had knowledge of such facts as would have put a reasonably prudent man on inquiry as to its terms." At this point we encounter the most troublesome feature of this case. Cofer did make certain inquiries, and ascertained that the defendant had an actual lease which expired on December 31, 1919. A very pertinent query is, could Cofer conclude his investigations at this point, complete his purchase, and be safe, or was he required to prosecute

further inquiries, and failing to prosecute them, is he to be charged with the knowledge that such further inquiries might have afforded? It may be well before proceeding further to collate from the record precisely what Cofer did and what he learned before completing his purchase.

Cofer purchased the property in controversy of East, through the latter's representative, Forrest, about April 1, 1919, giving forty thousand dollars therefor. He had the title examined by a Norfolk attorney, who "reported a clear title, no exceptions made whatever." Cofer states that he knew the Tea Company was a "tenant of the property at the time he made his purchase, but that he did not consult with it, or its representative; that it was not necessary."

### Extracts From Cofer's Testimony.

"Q. What notice did you have that any of this property had been rented?

"A. When Mr. Forrest brought this property to me to purchase, representing Mr. East, the owner of the property, I very naturally asked Mr. Forrest what the rentals were, and also how long the places were rented for. Mr. Forrest is a reputable— * * *

"Witness: When Mr. Forrest brought the property to me, I became interested in it, and the first question was with reference to the revenue and the tenants. Mr. Forrest is a reputable real estate man. I have had a number of dealings with him, and I have never yet had occasion to question any statement he made. I naturally assumed Mr. Forrest had given the information, and I took for granted that his statements were correct, and based on his statements of fact, I purchased the property.

"Q. What were his statements?

"A. To the effect that the revenue from the property was approximately $200.00 a month, and that all the leases expired approximately at the same time as of December 31st

this past year.  He was very positive of that, and I would not have acquired the property had I not known it.

"Q. Now, Mr. Cofer, Mr. Willcox has asked some questions here, the object of which was to develop some custom here in Norfolk.  I will ask you this: Is it customary in this city, when a reputable real estate agent who represents the owner of the property tells you that there is a short time tenancy on the property, for the purchaser to go to the tenant and ask to see his lease?

"A. It is not customary.  It would be rather out of place, I think.

"Q. Did you accept Mr. Forrest's statements as true?

"A. Absolutely, because he had investigated the matter at my request, and reported back to me, and I accepted his statements as final.

"Q. For whom was Mr. Forrest acting at that time?

"A. Mr. J. F. East, the owner of the property.  If Mr. Forrest had told me there was a long time lease on the property, I would have demanded to see the lease.  He told me the lease expired on January 1st, which was eight months after I purchased the property.

"Q. Have you stated all the information you had with reference to the tenancy of the property?

"A. Absolutely, which came through Mr. R. L. Forrest, the agent for Mr. East.

*Cross-Examination.*

"Q. You stated it is not customary to go back of the representations of the real estate agents as to leases?

"A. Not unless they are long time leases.  If they are long time leases, it is customary to call for a copy of the lease.

"Q. I am speaking of whether it is necessary to determine the—is it customary to rely on what the real estate agent tells you?

"A. I have been dealing in real estate for twenty years, and when a reputable man tells me when it expires, I take his word for it. If it had been a long time lease, I would have asked to see the lease.

"Q. You say the custom; that is what you do?

"A. I don't know the custom of others."

Mr. Forrest, who was examined as a witness, confirms the testimony of Cofer in the above particulars. The following questions and answers are taken from his testimony:

"Q. From what source did you get your information?

"A. I got my information, as well as I can recollect, from Capt. East. I do recall it took me some little while to find out what the rents were. I think he referred me to Mr. Hoggard, or said Hoggard could give them to me. I am sure I got my information from Capt. East and not from Hogfard. I don't think Hoggard told me anything about the lease or about the rent. I think it finally resulted in Capt. East giving me the information.

"Q. You never saw any written lease, did you?

"A. No, I never saw any written lease.

"Q. And you did not know anything about it except the information that you had gotten from either Capt. East or Hoggard, and passed it on to Mr. Cofer?

"A. That is all. I didn't have any conversation or communication with the defendant in any way at all.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

*Re-Direct Examination.*

"Q. You have sold, as Mr. Willcox says, considerable real estate; is it customary in this city for a purchaser, when he is informed by a reputable real estate agent that there are leases on the place which expire with the current year, to demand to see those leases in advance of the purchase?

"A. He might or might not. I never made any practice

in selling Granby street property to run around with the leases.

"Q. Is it customary to demand to see the leases where they expire the current year?

"A. As a general thing I would say no."

Mr. Cofer also states that when he purchased the property, paid his money and executed his notes, he had no knowledge of any written lease. This knowledge came to him later in the year, about August 1, 1919, according to the testimony of H. C. Hoggard.

The deed of May 1, 1919, of East and wife to Cofer, covenants that the grantors had done no act to encumber the land conveyed. It also appears from the record that the general custom with respect to Granby street property was to lease the same by written lease.

The contention of the plaintiff in error is that upon the state of facts appearing in the record, and substantially stated, *supra,* Cofer should have pursued his inquiries, and therefore is chargeable as a matter of law with knowledge of the renewal provision of the written lease. The instruction given properly remitted to the jury the determination whether or not Cofer, when he purchased the property, had knowledge of such facts as would have put a reasonably prudent man on inquiry as to the contents of the lease. The jury found in favor of Cofer and there is no reason to disturb their verdict.

[9] This court has considered in a number of cases the doctrine of notice and inquiry. In the nature of things, each case of this character must be decided on its own facts. No standard can be established, or rule promulgated in advance, which will be readily applicable to, and without difficulty decisive of, all subsequently arising cases. The general conclusions announced by this and other courts under this head, must be reasonably and intelligently applied by the court or jury trying the case, to the facts under consideration, and a conclusion reached on its merits.

In the case of *McClanachan* v. *Siter, Price & Co.,* 2 Gratt. (43 Va.) 280, 313, this court said: "The doctrine that whatever puts a party upon inquiry to notice is inapplicable to the provisions of the statute in regard to registered and unregistered conveyances. The registry is not intended to put subsequent purchasers and encumbrancers upon inquiry but to put an end to the necessity for inquiry. It is a notice in point of law to all persons of the contents, import and legal effect of the registered instrument; but not of other matters connected with the subject not apparent on the face of the instrument. The statute contracts this notice in point of law of registered conveyances with notice in point of fact of unregistered conveyances, and by fair construction, with notice in point of fact of any title or claim not disclosed by a registered instrument. The notice in point of fact must be such as to affect the conscience of a subsequent purchaser, or encumbrancer. It may be either actual, in other words direct, and positive, or it may be circumstantial and presumptive. But it is not sufficient if it merely puts the party upon inquiry. It must be so strong and clear as to fix upon him the imputation of *mala fides.*"

This question of notice is very ably discussed in the case of *Fischer* v. *Lee,* 98 Va. 159, 162, *et seq.,* 35 S. E. 441, and the clear general rule that constructive notice imposes upon a purchaser such inquiry as is suggested by the facts which are known or disclosed in the transaction, is fully sustained. There must be something more than the possibility that inquiry will disclose other facts inconsistent with or in addition to those already revealed. In the course of the opinion (98 Va. p. 165, 35 S. E. 442), Judge Riely says: "It was contended, however, that the duty of inquiry would not stop at insolvency, but required that the pledgees should inquire whether the property proposed to be pledged was paid for, and that this would have led to the discovery that the pianos had not been paid for, and to the further

discovery of the fraud committed in their purchase. The law of constructive notice does not impose on a purchaser such latitudinous inquiry upon mere knowledge that his vendor is in greatly embarrassed circumstances, or even that he is insolvent. It only imposes upon a purchaser such inquiry as is suggested by the facts which are known or disclosed in the transaction. There must be a connection between the facts disclosed and the further facts to be discovered upon inquiry that the former may be said to furnish a reasonable and natural clue to the latter. To go beyond this would extend the doctrine of constructive notice beyond the limit it has been carried by the courts, and would, especially in the case of personal property, unduly hamper and embarrass its transfer, and interfere with the freedom of trade."

But to affect a party with notice of the fact with which he is sought to be charged, whether he made inquiry or not, he must have had knowledge of facts and circumstances naturally calculated to excite suspicion in the mind of a person of ordinary care and prudence, and which would naturally prompt him to pause and inquire before consummating the transaction. Moreover, discovery of the fact should necessarily follow from the inquiry once embarked upon.

See also the case of *Arbuckle* v. *Gates & Brown,* 95 Va. 802, 30 S. E. 496, in which the evidence showed that the trustee in a deed of trust to secure creditors knew that there was some agreement between his grantors and Arbuckle Bros. and had seen the paper itself, though he was in doubt whether he had seen it before or after the assignment. The court held: "We are of opinion that the evidence falls short of that clearness that would affect the conscience of Boudar, trustee, and fix upon him the imputation of *mala fides,* and that he must be held to be a pur-

83

chaser for value without notice." 95 Va. p. 814, 30 S. E. 500.

The same question of the duty of further inquiry upon limited knowledge of a transaction, and of the effect of failure to make this inquiry, arose in the case of *Toupin* v. *Peabody,* cited *supra.* In that case the contract of lease made an actual demise for five years, with an option of renewal for a further term of five years. To secure the benefit of the additional term it was held that the instrument must be recorded. When Peabody purchased the property he was aware that the same had been leased, but was advised that the lease was not in writing, nor was he aware of the renewal privilege. The lessee insisted that, upon the facts, Peabody was charged with knowledge of the terms of the lease and was bound by the renewal clause. The court held that "the fact that a purchaser of land knew that the plaintiff was in possession, as a tenant, was not sufficient to affect him with notice of the terms of plaintiff's unrecorded lease, he being informed that it was not a written one, and it being such a lease as is declared by statute invalid as to a purchaser of the land unless recorded." See also *Crane's Nest Coal & Coke Co.* v. *Virginia Iron, etc., Co.,* 108 Va. 862, 868-9, 62 S. E. 954, 1119.

Plaintiff in error cites two cases from other jurisdictions in support of his contention that the plaintiff was charged with knowledge of the renewal feature of defendant's lease. These cases are *Jared* v. *Clements,* 1 Ch. Div. 428, an English case, and *Leominster Gas Light Co.* v. *Hillery,* 197 Mass. 267, 83 N. E. 870, a Massachusetts case. In the first case a party, while negotiating for a piece of property, obtained actual knowledge of an unrecorded mortgage on same. He gave notice that this mortgage must be discharged. On the day of settlement the vendor produced the original mortgage, and a receipt for the discharge of same, purporting to be signed by the mortgagee. Later it de-

veloped that this receipt was forged.    The purchaser, how-
ever, accepted the receipt as genuine, and bought the prop-
erty.    Later, on discovery of the fraud, the purchaser in-
sisted that the property was relieved from liability on the
ground that he had used due diligence to have the debt dis-
charged.    The court held otherwise.    Obviously, this case
is not the case in judgment.    The purchaser had actual
knowledge of the contents of the encumbrance, and gave
notice that the debt must be discharged.    Thereafter, he
proceeded at his peril.    Due diligence on his part to see
that the mortgage was discharged did not pay off the mort-
gagee's debt, and until that was an accomplished fact the
secured creditor who was in no wise at fault was entitled
to the benefit of his security.    This, in effect, is the court's
decision.    The following is taken from the syllabus:    "A
purchaser who, before completion of his purchase, received
actual notice of an outstanding equitable interest must, in
order to secure a good title from his vendor, take care to
see that such interest is got in or destroyed.    If he chooses
to complete in reliance upon the assurances of the vendor,
or the vendor's solicitor, that the interest has been got in,
or destroyed, he does so at his own risk, if it turns out that
the interest is still outstanding."

If Cofer had had actual notice of the contents of defend-
ant's lease, and upon assurances from his vendor, later
proven to be false, that the company for value had waived
its right to the renewals, had proceeded to consummate the
purchase, the case cited and the case in judgment would be
alike upon the facts.

[10]    In the Massachusetts case, a vendee took property
under a deed containing this provision: "Said premises
are sold subject to a mortgage of $16,500 to the Leominster
Savings Bank    *    *    *; also a lease of part of the premises
to the Leominster Gas Light Company and a lease of a part
of the premises to H. H. Bicknell & Co."    The lease of the

gas light company was for a term of five years, with a right
of renewal for a further period of five years. This lease
was not recorded. The purchaser of the property notified
the lessee to vacate at the end of the first term. This the
lessee declined to do and insisted upon his right of renewal.
The court held that, inasmuch as the purchaser took ex-
pressly subject to the lease, his rights were "subordinate
to the plaintiff's rights under the lease." Again the facts
of the instant case and the case cited are materially differ-
ent. Cofer did not purchase subject to defendant's lease,
or any other lease. His deed expressly states that the
"grantee shall have quiet possession free from all encum-
brances; and that the parties of the first part have done no
act to encumber the land." The defendant having failed
to secure absolute protection against subsequent purchasers
by expending a few dollars and conforming to the registry
laws of Virginia, seeks to relieve itself from the effect of
its failure in that respect, and find protection for its inter-
ests in the alleged omissions of the plaintiff. So long as
the latter is free of the imputation of *mala fides* he is safe,
even though further investigation might have revealed facts
of which he was wholly unaware, and which, once revealed,
would completely alter his status. Using the language of
Judge Riely, in *Fischer* v. *Lee, supra,* it was incumbent
upon Cofer, the purchaser, to "make the inquiry suggested
by the facts disclosed." To fix liability for a failure to
prosecute additional inquiries, there "should be such a con-
nection between the facts disclosed and the further facts
to be discovered upon inquiry, that the former may be said
to furnish a reasonable and natural clue to the latter."
Cofer was aware (a) that the defendant had a short-time
lease on the premises proposed to be purchased; (b) that
this lease expired on December 31, 1919; (c) that there
were no recorded liens against the property; (d) that the

lease probably was in writing; (e) that the vendor had covenanted that he had done nothing to encumber the land; (f) that it was not customary for a purchaser who has been informed by a reputable real estate dealer of a short-time lease, expiring with the current year, to ask to see the lease. There was nothing in these facts to furnish a reasonable and natural clue to the renewals contained in a brief paragraph in the elaborate signed, sealed and duly acknowledged indenture in the hands of the defendant, or to fix upon the plaintiff the imputation of *mala fides* for failure to definitely ascertain that the lease was in writing, demand its production and examine its contents, before completing his purchase. Further, this case was submitted to a local jury with an instruction which, in effect, advised them that if they believed from the evidence that at the time of his purchase Cofer had knowledge of facts which would have put a reasonably prudent man on inquiry as to the terms of the lease offered in evidence, they should find for the defendant. The jury, upon the facts, found for the plaintiff. It cannot be said that this verdict was without evidence to support it, or plainly wrong.

We find no error in this case, and the judgment of the trial court is affirmed.

*Affirmed.*

SIMS, J., dissenting:

In the case of *Toupin* v. *Peabody*, 162 Mass. 473, 39 N. E. 280, referred to in the majority opinion, the unrecorded lease was in writing for a term of five years, with a covenant therein that the "lessee is to have the privilege of renewing this lease upon the same terms for a further period of five years." Before the first term expired, the lessor conveyed the premises to a bona fide purchaser without notice of the written lease. The suit was by the lessee, by bill in equity,

against the purchaser to compel specific performance of the covenant for renewal in the lease.

The statute involved, so far as material, was as follows: "A conveyance of an estate in fee simple, fee tail, or for life, or a lease for more than seven years from the making thereof, shall not be valid as against any person other than the grantor or lessor and his heirs and devisees, and persons having actual notice of it, unless it is recorded * * *," etc.

The relief sought in that case would, if granted, have given the lessee tenant for years a longer holding than seven years from the making of the lease, to-wit, a holding of ten years. The case does not involve the question whether a lease for a less term than seven years, with the privilege to the lessee of yearly renewals thereafter, extending on beyond the seven years, would or would not be valid for terms which, together, would not exceed the period of seven years from the making of it.

In the opinion of the court in that case, this is said: "The intention of the particular clause in question is that a *bona fide* purchaser without actual notice may rely with certainty upon the fact that no instrument which does not appear of record, and of which he does not have actual notice, can give a tenant for years the right to any longer term than for seven years from the making of the instrument. * * *

"The general intention of the section in which the clause is found is that no instrument operating to create an interest in land greater than an estate for seven years shall, unless duly recorded, be valid as against any person other than one who makes it or his heirs or devisees, unless such person has actual notice of the instrument. * * * In fixing upon seven years for the making of a lease as the length of a term which might be valid as against a *bona fide* purchaser without actual notice, the legislature intended that to be the utmost which a lessee for years under an un-

recorded instrument could claim as against such a purchaser, whether the instrument demised directly a longer term or provided for its indirect creation by an agreement for renewal at the lessee's option."

However, as above indicated, that case does not involve the question which is involved in the instant case, namely, whether a lease for a less time than the statutory period, with the privilege given the lessee of yearly renewals for successive terms of one year during a certain number of years, the extreme limit of which exceeds the statutory period, is good for those terms which do not in the aggregate exceed the statutory period against a purchase for valuable consideration without notice, although unrecorded; and the case referred to does not decide that question, as indeed the court takes care to expressly state, in effect, in the opinion in such case. The following is there said on this subject: "We do not decide whether an instrument which makes a present demise for a term of seven years or less, and which provides for a further term which, with the present demise, will exceed seven years from the making of the instrument, either by way of a new lease * * * or by the effect of the lessee's mere continuance in possession after the expiration of the first term, if not recorded, is wholly void as to a *bona fide* purchaser without notice, or whether it may be good for the first term of seven years or less. It is enough for the purposes of this case to hold that as to any extension, or second term, or agreement for renewal, which will carry the possession of the lessee to more than seven years from the making of the instrument, every instrument which confers an estate for years is within the meaning of the statute."

Now, in the instant case, the "second term" covered by the agreement for renewal only is involved. That term added to the first term demised by the lease would "carry the possession of the lessee" to less than the statutory pe-

riod in Virginia of five years. So that the Massachusetts case just referred to is no authority for the holding that the instant case, in so far as the tenancy of the lessee drawn in question therein is concerned, is within the Virginia statute; and it seems plain from what is said in the opinion in the Massachusetts case aforesaid that such court would not so hold.

Coming then to the question aforesaid involved in the instant case, the following considerations lead, as I think, to the conclusion that the provision of the contract here involved is not within the Virginia statute.

As stated in the majority opinion, the statutes involved in the case before us, when read together, provide as follows: "Every contract in writing for the conveyance or sale of real estate, or *a term therein of more than five years,* shall be void both at law and in equity as to purchasers for valuable consideration without notice, unless and except from the time that it is duly admitted to record." (Italics supplied.) The contract under consideration, therefore, falls under the condemnation of the statutes only to the extent that it was made for a holding of the premises by the lessee for "more than five years" from the making of the contract.

As the contract stood when entered into (November 24, 1917), it might have been fully performed within two years and one month and six days, as the first term provided for began December 1, 1917, and ended on the last day of December, 1919. It was only in the event that the lessee exercised one of four options given by the contract of "four successive renewals of this lease" that the contract would not have been fully performed within that time. Before the first term expired, the lessee exercised one of his options of renewal of the contract, but expressly limited such renewal to an additional period of one year, which will be referred to as the second term. The action in the instant

case was instituted by the purchaser on January 12, 1920, to recover from the lessee the possession of the premises. There is involved in this action, therefore, the validity of the contract, as against the purchaser, only in so far as it is vouched by the lessee as his authority for holding the premises for the said second term, covering the year 1920. And as the contract stood at the time the action was brought, it might have been fully performed and terminated at the end of the year 1920, only three years and one month and six days from the time of the making of the contract. At the time of the action the lessee was not obligated by the contract to renew the lease further, and he did not assert any right then existing to hold the premises for a term or aggregate term of years in excess of five years, but only for the first and second terms, aggregating three years, one month and six days. As stated in the majority opinion itself, "It is only when the lessee using that demise," referring to the demise for the first term) "and the provision for renewals in conjunction, asserts a right to a term of years in the premises in excess of five years, that his contract is required to be recorded to be effective against a purchaser for value. If not recorded, then with respect only to his claim for a term greater than five years should the contract be considered as avoided as to such a purchaser." Since the lessee in the case before us did not assert, and his right to hold the premises at the time the action was instituted did not depend upon his right to assert "a right to a term of years in the premises in excess of five years," it clearly follows, as I think, that with respect to the claim of the lessee involved in this case, the contract cannot be considered as avoided by the statute. Further—

The statutory provision under consideration, in so far as concerns the language having reference to terms in real estate of "more than five years," is similar in its scope to

84

the provision of the statute of frauds (sec. 2840, Code 1904), embracing "any agreement that is not to be per- formed within a year." Hence, in accordance with the well-settled rules of construction of the statute of frauds (see *Seddon* v. *Rosenbaum,* 85 Va. 928, 9 S. E. 326, 3 L. R. A. 337, 1 Va. Law Reg. 553, *et seq.*), and also with the principle on which the decision of the Massachusetts case above referred to is based, I think that so much of the con- tract involved in the instant case as could be performed within the period of five years from the making of it, which certainly included the second term aforesaid, is not within the Virginia statute, and is therefore valid as against the purchaser, the defendant in error.

Such, indeed, it would seem, would have been the opinion of the learned trial judge if he had thought the contract severable with respect to the second term aforesaid. In the opinion of such judge in the record before us, this is said:

"It is further urged on behalf of the defendant that as the term is for only two years and one month and the con- tract for renewal provides for successive terms of one year each, it is valid until the term is reached which would carry it beyond the five-year period.

"This would be true if these were separate or separable contracts for each renewal, but the lease contains but one clause of renewal, and the law is well settled that where a contract is entire and relates in part to a matter which requires it to be in writing, the whole provision is void. *Engleby* v. *Harvey,* 93 Va. 440, 25 S. E. 225; *Noyes* v. *Humphrey,* 11 Gratt. (52 Va.) 636."

The entire contracts involved in the two cases cited in the quotation just made were verbal contracts of a party to pay both for work done and to be done for another. Such contracts are not analogous to that involved in the instant case. And the fact that there is but one writing and but

one renewal clause in that writing is, as I think, immaterial. The material question is, might that portion of the contract which is involved in the case before us, as aforesaid, have been fully performed without any obligation on the lessee thereunder for any further period? If so, the contract was clearly severable in that respect and is not within the statute. That it was thus capable of performance and thus severable seems to me to be obvious from the provisions of the contract, which, as aforesaid, did not obligate the lessee as a tenant beyond the first term as the case stood when the contract was executed, and did not obligate him beyond the second term, as the case stood when this action was instituted. The circumstance that the lessor was obligated by the contract for a longer time than the statutory period is not alone the true criterion of the length of the contract obligation. Although one of the parties to a contract is thereby bound for a certain period longer than the statutory period in question, if the other party thereto is given thereby an option to terminate the contract at a time within the statutory period, the contract will be construed as one which may be performed within the statutory period, and hence as not within the statute. In *Seddon* v. *Rosenbaum*, 85 Va. 928, 9 S. E. 326, 3 L. R. A. 337, the contract bound the defendant "to buy 250 shares R. & D. at eighty-nine and sell the same to T. Seddon" (the plaintiff) "at the end of three years at ninety-six." But it contained the further provision that "stock may be called at ninety-six at any time before expiration of two years." And it was held that the contract might have been performed within one year, and hence was not within the statute of frauds.

For the reasons stated, I feel constrained to dissent from the majority opinion.