UNITED STATES TRUST COMPANY of New York, as Trustee, etc., Appellant, *v.* MILES M. O'BRIEN, Respondent.

In an action at law to recover damages for breach of a covenant it is no answer that plaintiff had a remedy in equity to prevent the violation of the covenant and did not avail himself of it.

In an action for a breach of contract the damages recoverable are those which the parties may fairly be supposed when they made the contract to have contemplated as naturally following its violation.

The inquiry is, what is an adequate indemnity to the party injured, and while damages which are "uncertain, speculative and contingent" are not recoverable, plaintiff is not bound to show to a certainty which excludes the possibility of a doubt, that the loss claimed resulted from defendant's violation of the contract. Reasonable certainty, founded upon inferences legitimately and properly deducible from the evidence that the loss resulted from the breach and was the natural and proximate result thereof, is all that is required.

A lease to defendant of a building in the city of New York for a term which expired May 1, 1889, contained covenants on the part of the lessee against subletting or assigning; also, that at reasonable hours in the daytime he would permit the lessor or his agent to show the premises to such persons as they desired for the purpose of selling or leasing, and that he would permit the usual notice of "To let" to be posted on the premises, and to remain there without molestation. In an action to recover damages for breach of this covenant these facts appeared: Defendant sublet the premises to another for a portion of the term, who took possession; he refused to permit the posting of any notice, and refused entrance to any one desirous of looking at the house for the purpose of leasing or purchasing; after expiration of the lease the house remained unoccupied and without being leased or sold until February 1, 1890, when it was leased for $900 a year. Evidence was given that in May,

1889, the rental value was $1,000; also tending to prove that directly in. consequence of the violation of the covenants plaintiff suffered some loss of rent. The trial court held that the failure to rent could not, upon the evidence, be regarded as the natural or necessary consequence of the breach, and directed a judgment for nominal damages only. *Held*, error; that the covenants as to posting the notice and showing the premises, were included in the lease to aid the lessor in re-leasing at the expiration of the term with the least possible delay, and in inserting them the parties contemplated an amount of rent which might be lost by an inexcusable refusal to perform them, as a proper measure of damages; and that the evidence was sufficient to require the submission of the question to the jury as to whether there was a loss of rent. because of the violation of the covenants.

(Argued June 21, 1894; decided October 9, 1894.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made June 5, 1893, which affirmed a judgment in favor of defendant entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edward W. Sheldon* for appellant. The failure to rent the premises from May 1, 1889, to February 1, 1890, was the direct, natural and certain consequence of the defendant's breach of the covenants in the lease. (*R. L. Co.* v. *S. & P. P. Co.*, 135 N. Y. 209; *Davis* v. *Garnett*, 6 Bing. 716; *Drucker* v. *M. R. Co.*, 106 N. Y. 157; *Wakeman* v. *W. & W. Co.*, 101 id. 205; *Beeman* v. *Banta*, 118 id. 538; *Wait* v. *Borne*, 123 id. 592, 607; *Bernstein* v. *Meech*, 130 id. 344, 360; *Rumsey* v. *N. Y. & N. E. R. R. Co.*, 136 id. 543, 546; *Friedland* v. *Myers*, 139 id. 432, 436.) The burden of proof was on the defendant to show that the plaintiff, by negligence or inaction, contributed to or enhanced the loss. (*Colrick* v. *Swinburne*, 105 N. Y. 503, 508; *Swain* v. *Schieffelin*, 134 id. 471, 474; *Baker* v. *Drake*, 53 id. 211.) The opinion of the General Term on the first appeal of this case was erroneous. (*Baker* v. *Drake*, 53 N. Y. 211; *Swain* v. *Schieffelin*, 134 id. 471; *Roosevelt* v. *Hopkins*, 33 id. 81; *Williams* v. *Earle*,.

L. R. [3 Q. B.] 769; *Ganson* v. *Tifft*, 71 N. Y. 48; *Town-send* v. *Scholey*, 42 id. 18; Fox on Landl. & Ten. 208.) If any preventive remedy in equity existed, it was not exclusive of a suit for damages. (*Beach* v. *Crain*, 2 N. Y. 86; *Lockrow* v. *Horgan*, 58 id. 635.)

*Peter A. Hendrick* for respondent. It cannot be said that the proximate cause of the house remaining idle from the 1st of May, 1889, until the 1st of February, 1890, arose from the defendant's refusing to allow the notice "To let" to be placed upon the house or persons to inspect the same, or that the fact that the house remained empty was the natural result of such acts, and, therefore, no damage was shown. (1 Sedg. on Dam. [8th ed.] 56; 2 Greenl. on Ev. [14th ed.] § 256; *Griffin* v. *Colver*, 16 N. Y. 489; *Baldwin* v. *U. S. T. Co.*, 45 id. 744; *Parsons* v. *Saltus*, 66 id. 92; *Frye* v. *Maine Central*, 67 Maine, 414; *U. S. T. Co.* v. *Gildersleeve*, 96 Am. Dec. 519; *Ashe* v. *DeRosset*, 72 id. 552; *Allen* v. *McConike*, 124 N. Y. 342; *Friedland* v. *Myers*, 139 id. 432.)

Peckham, J. The plaintiff commenced this action to recover damages for the breach of certain covenants contained in a lease of premises situated in the city of New York to the defendant for a dwelling house. After the evidence was all in the court directed a verdict for the plaintiff for six cents damages only, and the judgment entered thereon having been affirmed by the General Term of the New York Superior Court, the plaintiff has appealed here, and it now maintains that the question of the amount of damages arising from the breach of the covenant should have been submitted to the jury. The plaintiff is the substituted trustee under the will of William H. Belden, deceased. Its predecessor executed the lease to the defendant for a term of three years expiring on the first of May, 1889. The lease contained a covenant against subletting or assigning on the part of the lessee, and also a covenant on his part that at reasonable hours in the daytime he would permit the lessor or his agent

to show the premises to such persons as he desired for the purpose of selling or leasing the same, and that he would permit the usual notice of "To let" to be posted on the premises and to remain there without molestation. In November, 1888, the defendant vacated the premises and sublet them to a third party for a portion of the term remaining. This person being in possession refused to permit the posting of any notice and refused entrance to any one for the purpose of looking at the house with a view of purchasing or leasing the same. The house remained unoccupied and without being leased or sold until February 1, 1890, when it was leased for $900 a year. Evidence was given that the rental value was in May, 1889, $1,000 a year. When the house was vacated it was not in a habitable condition and repairs were made to it which consumed two or three weeks. In order to secure tenants and as soon as the lease expired, bills were put up and the house was continually offered for rent, without success, until February following. The plaintiff then brought this action to recover damages for the breach of the covenants not to sublet, and to permit the placing of the notice on the house and to allow the premises to be shown for the purpose of selling or leasing the same. The plaintiff recovered a verdict on the first trial, which was set aside upon appeal by the General Term, and upon the second trial the court directed the verdict of six cents as stated. The plaintiff now urges that the direct result of the violation of these covenants was the failure to rent the house from May 1, 1889, until February 1, 1890, and that damages might have been awarded to it by the jury on the evidence for that time at the rate of $1,000 per year. The courts below have held as matter of law that the failure to rent could not upon the evidence be regarded as the natural or necessary consequence of the breach of his covenants by the defendant, and hence directed a verdict for nominal damages only. It is clear, and so it has been held in many cases, that the rule of damages should not depend upon the form of the action. In all civil actions the law gives or endeavors to give a just indemnity for the wrong which has

been done the plaintiff, and whether the act was of the kind designated as a tort or one consisting of a breach of a contract is on the question of damages an irrelevant inquiry. As was said by Rapallo, J., in *Baker* v. *Drake* (53 N. Y. 211, 220), the inquiry is what is an adequate indemnity to the party injured, and the answer cannot be affected by the form of the action in which he seeks his remedy. In special cases where punitive or exemplary damages are allowed, an exception exists to the general rule of indemnity. (*Swain* v. *Schieffelin*, 134 N. Y. 471, 474.) It is a mistake, therefore, to say that liability for breach of covenant is less extensive than for that of tort, if cases of tort be excluded in which punitive damages are allowed.

In an action for a breach of contract the damages recoverable are those which the parties may fairly be supposed when they made the contract to have contemplated as naturally following its violation. (*Rochester Co.* v. *Parker Co.*, 135 N. Y. 209, 217.)

Speculative, contingent and remote damages are excluded.

The courts below have agreed that this is the true rule of damages, and in applying the rule to this case have held that the proof of damage and the cause thereof were too uncertain and speculative to authorize a recovery for any other than nominal damages; that there was no solid or substantial basis for the jury to find the fact that the refusal to perform the covenant was the cause of the loss of rent.

In using the words " uncertain, speculative and contingent," for the purpose of excluding that kind of damage, it is not meant to assert that the loss sustained must be proved with the certainty of a mathematical demonstration to have been the necessary result of the breach of covenant by defendant. The plaintiff is not bound to show to a certainty that excludes the the possibility of doubt that the loss to him resulted from the action of the defendant in violating his agreement. In many cases such proof cannot be given and yet there might be a reasonable certainty founded upon inferences legitimately and properly deducible from the evidence that the plaintiff's loss was

not only in fact occasioned by the defendant's violation of his covenant, but that such loss was the natural and proximate result of such violation. Certainty to reasonable intent is necessary, and the meaning of that language is that the loss or damage must be so far removed from speculation or doubt as to create in the minds of intelligent and reasonable men the belief that it was most likely to follow from the breach of the contract and was a probable and direct result thereof. Such a result would be regarded as having been within the contemplation of the parties and as being the natural accompaniment and the proximate result of the violation of the contract. Regarding the purpose for which these covenants in the lease were inserted, it is obvious that two of them could only have been placed there to facilitate and aid the lessor in his efforts to obtain another tenant at the expiration of the lease with the least possible delay. Continuous occupation of premises is necessary in order that continuous rent may issue therefrom. In order to secure the renting thereof the custom has become substantially universal to place on the house itself a notice that it is " to let," and the showing of the house itself to would-be tenants is a necessity which evidence is not requisite to prove. In order to secure these privileges a landlord inserts the covenants in the lease. Can there be any doubt that parties, when inserting in a lease such covenants, contemplate the amount of rent which may be lost through the inexcusable refusal to fulfill them as a proper measure of damages? It would seem as if it were not only the most natural rule, but that none other could in truth have been in the minds of the parties. The proof may sometimes be rather difficult upon the question whether the damage was the just or proximate result of the breach of the covenant. In such case it does not come with very good grace from the defendant to insist upon the most specific and certain proof as to the cause and amount of the damage when he has himself been guilty of a most inexcusable violation of the covenants which were inserted for the very purpose of preventing the result which has come about. (*Wakeman* v. *Wheeler*,

etc., Co., 101 N. Y. 205.) Reasonable certainty is sufficient. The inference that the result followed because of the prior violation of the contract is sometimes a legitimate one and founded upon the evidence in the case. Looking at the object for which such covenants are inserted and the substantially universal custom adopted for the purpose of renting premises, and it would seem plain enough that the natural and obvious consequence of a breach might be the failure to rent. I do not say "must" be the failure to rent, because it is equally plain there would be a possibility of renting notwithstanding the breach of such covenants, and if the renting were accomplished there might be no damage sustained because of the breach. In a case, however, where there is a failure to rent, is the cause of such failure necessarily and in all instances so uncertain as to prevent any recovery of damages? I think not. To hold otherwise is to deprive the covenants of most of their value. If no damages are recoverable for their breach the plaintiff obtains very little security by reason of their insertion in the lease, and the defendant runs very little if any risk from their violation. Mere preventive remedies might be wholly inadequate. If the remedy for such a violation is confined to the preventive one by injunction much of the force and efficacy of these covenants will be taken away. For a short time prior to the first of May in any year in the cities of this state the season for renting houses exists. If during this season the lessor is engaged in litigation over the alleged breach of these covenants by the lessee it is easy to see how ineffectual the remedy by injunction might be. The season for renting is short at best, the plaintiff's allegations might be denied, and, though finally successful, the time spent even in a successful contest might use up the whole season. Various colorable compliances with the terms of the covenants might be practiced by the lessee, and if only prolonged a sufficient time the lease would terminate and the season end at the same period, and though it should finally be determined that the covenants had not in fact been complied with, it would be too late for redress to the plaintiff by any

form of injunction or of equitable relief, and as the rule at law would in such case be to give but nominal damages, the plaintiff would be substantially without remedy, and the defendant would escape the proper consequences of his inexcusable refusal to fulfill his obligations. If, however, it be assumed that the plaintiff had an adequate remedy in equity and by injunction, that fact is no answer to his claim for the recovery of damages in an action based upon a violation of the covenants. That a party has an adequate remedy at law has been known to be a good answer to his prayer for relief in equity, but in an action at law to recover damages for a violation of his covenant by the defendant, it is no answer to set up that at one time the plaintiff had a remedy in equity which he did not avail himself of to prevent the violation of such covenant by defendant.

The learned court below seems to have assumed there was an inadequate remedy at law because of the impossibility of proving that the plaintiff suffered damage and the amount thereof by reason of the breach of the covenants by defendant, and hence equity provided a full and adequate remedy by injunction. We do not think there is any such impossibility of proof, or that there exists a perfectly adequate remedy in equity. To say that there may be cases where the damages recoverable for a breach of this class of covenants are not nominal only, but may be definite, certain and direct as the result of the breach, we do not mean to say that in all cases of such breach, followed by a failure to rent, the defendant would be liable for the amount of rent lost. The failure to rent might have no connection with the violation of the covenants. It might be so plainly the effect of some other and more potent cause that it would be the duty of the court to direct a verdict for the defendant upon such an issue. In other cases the question might be one for a jury to decide, under proper instructions from the court. The question as to what was the direct, immediate, proximate cause of damage is not always simply one of law. In the case at bar we think the plaintiff proved enough to require the submission to the jury

of the question whether the failure to rent was the direct result of defendant's violation of his covenants, and, if so, what amount of damage the plaintiff sustained by reason of such breach of defendant.

There was some dispute as to the rental value of the premises upon the trial, and as to the length of time (if at all) that the premises stood idle by reason of the acts of defendant, and these were questions which the jury should have been permitted to pass upon. They were not of so wholly uncertain, vague or speculative a character as to preclude their submission to a jury.

The plaintiff gave evidence tending to prove the violation of the covenants by defendant (indeed such violation is substantially conceded), and that directly in consequence of such violation the plaintiff suffered some loss of rent. The evidence on the part of the defendant was sufficient to raise a question of fact for the jury upon the issue whether defendant caused the damage, and, if so, in what amount. The jury should have been permitted to decide the question.

For these reasons we think the judgments of the courts below should be reversed and a new trial granted, with costs to abide the event.

All concur, except ANDREWS, Ch. J., not sitting.

Judgments reversed.