(13 Misc. Rep. 619.)

## DETROIT WHITE LEAD WORKS v. KNASZAK.

(Superior Court of Buffalo, General Term. July 30, 1895.)

**SALE—BREACH OF WARRANTY—EVIDENCE.**

In an action to recover the price of goods sold, evidence that defendant resold the goods to third persons, who used them; that they proved worthless; and that defendant thereby lost trade and custom, and suffered much damage,—is not admissible to sustain a defense of breach of warranty, where plaintiff testified that he bought the goods for his own use, and there is no evidence that plaintiff knew that defendant was in the habit of selling such goods.

Appeal from trial term.

Action by the Detroit White Lead Works against Frank A. Knaszak. There was a judgment in favor of defendant, and plaintiff appeals. Reversed.

Argued before TITUS, C. J., and HATCH, J.

Moses Shire, for appellant.

Philip A. Laing, for respondent.

HATCH, J. This action was brought to recover a balance remaining unpaid on the purchase of a quantity of white-lead paint. The answer admitted the purchase, that the balance remained unpaid, alleged a breach of warranty in the sale, and damages thereunder, for which judgment was asked.

Defendant carried on the business, at Buffalo, of painting houses, and selling paper, paints, oils, and supplies to other parties to be used in painting houses. The dealing between the parties began

in 1889 in a small way, but it appears that but little, if any, white lead was sold prior to 1890, and the sale at which the claimed warranty was made was either in that year or the next.   Plaintiff denied breach of any warranty, and claimed that the goods which it sold were of a character with which defendant was familiar, and such as he ordered.   The evidence to establish the warranty came from the defendant and his wife, both testifying that plaintiff represented the article sold to be strictly pure white lead.   It was admitted that the article was not such in fact, but was, an article of much lower grade.   Defendant testified that in making the purchase, and as a part of the contract, he stated to plaintiff that he "wanted this lead to use for his own use for house painting."   And on cross-examination he said: "I recollect Chase's lead, for I bought it purposely for my own use, because it was guarantied."   And the statement in counsel's brief for defendant is: "This lead was bought for a special purpose."   Defendant offered evidence to show that he sold the lead so purchased to other parties, who used it; that it proved worthless; and that thereby he lost trade and custom, and suffered much damage.   This evidence was received under objection and exception, and much testimony was given thereunder tending to establish the claim.   The court found that the lead was graded lead; that plaintiff warranted the lead to be pure white lead, and that defendant relied upon such warranty in making the purchase.

The sixth finding is:

"That, when the plaintiff sold and delivered graded leads to the defendant, * * * it knew that the defendant intended to use such graded leads in the preparation of paints for dwelling houses and other buildings, and that he intended to sell the same to his customers for the same purpose."

This is followed by findings that defendant used the lead in his own business, and sold it to others; that it was unfit, unsuitable, and improper for use; that, in consequence of sale to his customers, he lost them; that they refused to trade with him on account thereof, and that he suffered in reputation and loss of custom.   And on account of all the matters it is found that he suffered damages in the sum of $1,250.

I am of opinion that the sixth finding and those following, dependent thereon, are not sustained by legal proof.   The rule of law defining what may be considered to be the proper measure of damages in actions of this character is reasonably well settled, although its proper application to particular cases is quite likely to be attended with difficulty.   Damages which may be awarded are such as the parties may fairly be supposed to have had in contemplation, when the contract was made, as reasonably following its violation. Judge Earl said:

"The damages must flow directly and naturally from the breach of the contract, and they must be certain both in their nature and in respect of the cause from which they proceed." Rochester Lantern Co. v. Stiles & Parker Press Co., 135 N. Y. 209, 31 N. E. 1018.

Such damages as are uncertain, contingent, and speculative are rejected.   What will be considered as within the fair contemplation

of the parties must be the natural accompaniment and the proximate result of the violation of the contract. Trust Co. v. O'Brien, 143 N. Y. 284, 38 N. E. 266.

Where goods are sold for a particular purpose, the damages are such as flow naturally from the use of the article for the particular purpose, in consequence of which the rule of damage is much more liberal than when sold for general purposes. In applying the law to such a case, Follet, J., said:

"This broader rule rests on the theory that the vendor, having sold the articles with the knowledge that they were purchased for a particular purpose, should be held liable for such damages as naturally flow from the breach of his contract, and which he, or any reasonable man, might apprehend would follow from the breach." Swain v. Schieffelin, 134 N. Y. 471, 31 N. E. 1025.

The natural result of such a sale would seem to be that the article, being sold for the particular purpose, would be used for it, and that such use would be the only use in fair contemplation of the parties. It can scarcely be claimed that, when parties so contract, it could reasonably be said that a general use was contemplated, when only a special use was contracted for. The sale here was for the special use of defendant. His language excluded any idea that he purchased the paint with any expectation of a resale to others. He said that he wanted it for his own use,—a particular purpose. He so told plaintiff. How could plaintiff, then, suppose that there was any liability that he would sell to others, and thus destroy his trade? How could it suppose that any loss of custom would result when it was informed the article was for defendant's personal use? If defendant had used the article himself, it could not be said that he would have lost any trade or custom on account of it. Loss of trade and reputation could only come through his dealings with others, and when that did not enter into the contract how could the parties be said to contract having it in contemplation?

If special damages are only allowed when the article is sold with knowledge that it would be used for a particular purpose, it would seem to be equally reasonable to say that it excludes any damage which could only arise if the special purpose be departed from. It is true that to some extent the defendant dealt in the article which he purchased, but there is nothing in the case showing that plaintiff had knowledge of such fact, except the inference which arises from the fact that he was at defendant's place of business. Defendant's description of his business is that he was a house painter and contractor of house painting, and had a wall-paper store, and kept a store, and sold paints, oils, and papers; but that his business consisted chiefly in outside painting, which he did himself and with employés, 12 to 16 in number; that he also sold goods to contractors. To what extent plaintiff had notice of defendant's business and its character the case is silent, and, in the absence of proof, it is quite as reasonable to say that he only had notice of what defendant chiefly did as to say that he had notice of the incidental branches connected with it. There is not sufficient of this evidence to say that plaintiff had notice that defendant intended to sell the paints

sold to others, or that plaintiff was bound by consequences if he did so, when defendant's version is that he contracted for a particular use, understood by plaintiff.

We reach the conclusion, therefore, that the objection made to the reception of evidence showing loss of custom should have been sustained, and the evidence excluded. With this evidence excluded, there is no testimony to support the finding. And, as such finding entered into the consideration upon which the recovery was awarded, it follows that there is no basis to sustain the judgment rendered in this respect. The judgment should therefore be reversed, and a new trial ordered, costs to abide the event.