PALMER ET AL., TRUSTEES, *v.* CONNECTICUT
RAILWAY & LIGHTING CO.

No. 38. Argued November 15, 1940.—Decided January 6, 1941.

· *Mr. James Garfield,* with whom *Mr. Hermon J. Wells* was on the brief, for petitioners.

546

548

*Mr. George W. Martin* for respondent.

550

By leave of Court, *Messrs. Robert G. Dodge* and *Talcott M. Banks, Jr.* filed a brief on behalf of the Trustees of the property of Old Colony Railroad Company, as *amici curiae,* urging reversal.

MR. JUSTICE REED delivered the opinion of the Court.

This certiorari, which we allowed because of its importance, involves problems of proving a lessor's claim for damages for rejection of its lease in a proceeding under § 77 of the Bankruptcy Act. The lease, demising respondent's street railway properties and equipment in Connecticut for 999 years from 1906, was rejected on December 18, 1935, by petitioners, the trustees of the debtor, the New York, New Haven and Hartford Railroad Company.[1] The annual rent reserved at rejection was close to $1,050,000 with tax, sinking fund, interest

---

[1] The lease originally covered additional properties, but as to these the debtor no longer had an interest.

and bond retirement adjustments, which are not material to our discussion.

After rejection the lessor filed a claim for damages, under subsection (b) of § 77. The applicable provisions are as follows:

". . . In case an executory contract or unexpired lease of property shall be rejected, . . . any person injured by such . . . rejection shall for all purposes of this section be deemed to be a creditor of the debtor to the extent of the actual damage or injury determined in accordance with principles obtaining in equity proceedings. . . ."

The claim was allowed, limited to the damages accrued or which might accrue before the winding up of the reorganization. This Court on a previous certiorari [2] disapproved that measure of damages and laid down as the measure "the present value of the rent reserved less the present rental value of the remainder of the term." On remand to the district court, the lessor undertook to prove damages according to the approved measure by introducing evidence of the present value (January 1, 1936), at four per cent discount, of the rent reserved under the lease for forty years only (to December 31, 1975). This amounted to around twenty million dollars. For a corresponding period evidence of rental value similarly discounted was offered. The difference was submitted as the damages for rejection. No proof of rent reserved or rental value beyond the forty years was offered as respondent was advised such proof would be too uncertain to carry conviction.

To prove rental value, respondent offered evidence of annual earnings for each of the forty years: These earnings were made up of the earning power of a sinking fund, plus an adjustment of the annual payments re-

---

[2] *Connecticut Railway & Lighting Co.* v. *Palmer,* 305 U. S. 493, 504.

quired by the lease to be made to the sinking fund, plus
the operating profits of the transportation properties.
For 1936–1938 the actual earnings were used. This was
the period after rejection and before trial when, the de-
mised properties were operated by or for respondent.
For 1939–1975 earnings were estimated by alternative
calculations of average annual earnings, before federal
taxes, over four prior base periods each ending December
31, 1938: (1) the preceding year and a half of 100% bus
operation; (2) the three years of actual operation, follow-
ing rejection, during which the transition from trolleys
to buses had been completed; (3) ten years, 1929–1938,
the accounts for which were partly reconstructed because
before the reorganization the demised premises were uti-
lized in conjunction with others not involved here; and,
finally, (4) fourteen years, 1925–1938.[3] The earning
power of the sums in the sinking fund and the annual
payments to it were assumed to be fixed. To get the
rental value, these two fixed sums were added to the
operating profit calculated from each of the four base
periods. Since earnings were erratic, varying from $78,-
000 to $775,000 in the fourteen-year period, the annual
rental value for the future varied according to the base
used. Likewise, the damages calculated for forty years
showed a range of from nine and a half to thirteen and
a third million. It is substantially correct to say that
no evidence in disagreement with the base figures was
produced for the petitioner. Nor did petitioner intro-
duce any evidence on its part to establish a different
amount of damages.

The district court refused to find future earnings by
projecting the average earnings of any of the four base

---

[3] To fill out the data petitioner calculated the proportionate rent
reserved and the actual earnings for the short period between the
date of rejection, December 17, 1935, and January 1, 1936.

periods. It pointed out that in its view the 100% bus operation was too new and had coincided with too great a shrinkage of earnings to serve as a safe guide. The data for 1936–1938 were deemed unconvincing because they were derived in a substantial measure from trolley operations, now abandoned, and because the period was one of economic depression. The ten and the fourteen-year bases were disapproved as irrelevant because of trolley operation, and as speculative because of the impossibility of forecasting the relative frequency of profitable and unprofitable years from this past experience. The court pointed out that no evidence of transportation experts or surveys was offered to assist it in appraising possibilities of the development of the territory, of increased operating efficiency or the effects of consolidation.[4] Furthermore, the trial court was of the view that even with acceptable proof of annual rental value for forty years, or other period materially shorter than the unexpired term of the lease, no conclusion could be reached as to the present rental value of the remainder of the term, because that portion of the term beyond the reach of the proof offered might have profits or losses which would upset the calculations for earlier years. The district court then struck out the accrued damages of more than a million dollars allowed on the former hearing and set aside the provision of the same order permitting accrued damages to be proven up to the date of final hearing.

The circuit court of appeals was of the view that "in effect, the law for purposes of damages treats a lease with 969 more years to run as if it were only for a term within the reach of fairly definite forecast." 109 F. 2d 568, 571. It thought that the evidence of earnings over the four-

---

[4] See another New Haven long term lease, *In re New York, N. H. & H. R. Co.*, 30 F. Supp. 541, where evidence of this kind appears.

teen-year experience was adequate to enable it to draw a reasoned conclusion as to probable earnings for eleven years. For the three years, 1936–1938, these were known; for the other eight years, the average annual earnings for the preceding 14-year period were adopted. An allowance of the damages at time of rejection was made in the amount of $4,411,837.61.[5]

The certiorari brings here the questions of whether proof of damages for a portion of an unexpired lease is sufficient to fix damages for the whole remaining term and whether the circuit court of appeals may allow damages on the sole basis of past earnings, evidence which the district judge has held does not satisfy his mind.

*First.* Litigation over a 999-year lease naturally brings up incidents difficult to reconcile with known and established legal formulae. Since conveyancers and business men alike have long utilized the characteristic provisions of leases to accomplish transfers of rights in real estate for extensive periods without payment of the purchase price, such long term agreements have become a well recognized legal implement, especially in corporate realty transactions and railroad consolidations and mergers. Its reservations of rent, provisions for taxes and operation are firmly embedded in our financial, corporate and title structures.[6] Business and government alike are ac-

---

[5] The preciseness of this figure as to the amount of damage is illusory. It is obtained by accepting estimated interest rate and average earnings for eight years in the future, reduced to present cash value, as shown by respondent on a table covering forty years and deducting this from the agreed rent, discounted.

[6] Nearly forty thousand miles of road are leased by Class I railroads from 292 lessors. Class I roads operate over 93 per cent of all railroad mileage. Leased property represents over 15 per cent of this total. Over four billion dollars is invested in railroad property under lease. Tables 1, 129, 156 and 162. Statistics of Railways in the United States 1938. See Meck & Masten, Railroad Leases and Reorganization, 49 Yale Law Journal 626.

customed to fix the rental value of property for long term leases and the value of the lease over and above the rent reserved at varying periods of the term.[7]  In pending railroad reorganizations, themselves, appraisals of rental values must be considered.[8]  That such determinations recur with some frequency demonstrates their practical possibility.

The petitioner contends, however, that evidence of rental value for a 40-year period, no matter how certain it may be, is inadequate to enable a court to establish the damages for the entire 969 remaining years. · Its argument is that one cannot be sure the truncated portion will not show sufficient gain to absorb all losses. Since certain proof for distant years cannot be produced, this objection leaves the lessor to qualified opinion evidence as to annual rental value, discounted for the term to show present damage.  Such an opinion necessarily

---

[7] Tax Cases: In many tax cases long-term leases have been valued, though frequently without any statement of the evidence or method used.  Northern Hotel Co., 3 B. T. A. 1099, 1102; Newman Theatre Co., 4 B. T. A. 390; L. S. Donaldson Co., 12 B. T. A. 271; A. H. Woods Theatre Co., 12 B. T. A. 827; Consolidated Investment Co., 13 B. T. A. 1252; Hotel Wisconsin Realty Co., 16 B. T. A. 334; James Bldg. Co., 22 B. T. A. 658; Martha Realty Co., 22 B. T. A. 342, 344; *New York ex rel. Delaware & Hudson Canal Co.* v. *Feitner,* 61 App. Div. 129; 70 N. Y. S. 500; *Appeal Tax Court* v. *Western Maryland R. Co.,* 50 Md. 274, 298; *Philadelphia, W. & B. R. Co.* v. *Appeal Tax Court,* 50 Md. 397; *New York ex rel. Gorham Mfg. Co.* v. *State Tax Comm'n,* 197 App. Div. 852; 189 N. Y. S. 241.  Eminent Domain Cases: *Matter of the City of New York: Beers* v. *Schlessinger,* 120 App. Div. 700; 105 N. Y. S. 779; *In re Park Site,* 247 Mich. 1; 225 N. W. 498.  Contract Cases: *Bondy* v. *Harvey,* 218 App. Div. 126; 217 N. Y. S. 877; *Williams* v. *Burrell,* 1 C. B. 402.

[8] E. g. New York, New Haven & Hartford Railroad Company Reorganization, 239 I. C. C. 337, 351, 386, 387, 389, 453; *In re Chicago, Milwaukee, St. Paul & Pacific R. Co.,* 36 F. Supp. 193, 205 *et seq.;* same, 239 I. C. C. 485, 537, 553; Erie Railroad Company Reorganization, 239 I. C. C. 653, 685, 689.

proceeds from presumably adequate knowledge of what lessees, desiring but not requiring the facilities, would be willing to pay for a new lease and lessors, in a similar attitude toward renting, to accept for the remainder of the term. While such evidence is admissible for consideration in forming a judgment upon damages, it has little, if any, probative force beyond the immediate years. Certainly such opinion evidence alone cannot be permitted to fix rental value for purposes of damages in the indefinite future. The final objective of the proof is not how much the remainder is worth now but what damages the lessor has suffered. For this he is awarded compensation. The measure of that damage is rent less rental value, a matter of judgment to be reached in the light of pleading and proof supplemented by judicial knowledge.

The law for purposes of damages does not treat a broken lease of a thousand years as though it ran only for a limited time, the damages for which are measurable. But since evidence of the damage is necessarily limited to a time of "definite forecasts" the rule of rental value permits the use of data for only a limited number of years to determine damages. The number of years to be considered depends upon the fullness and quality of the evidence offered to establish the damages. Hence, whether a limited term beyond the reach of forecasts or the whole term is to be used as a base for rental value, the evidence of earnings would be projected the same number of years. This, we think, is what was meant by the circuit court of appeals when it treated the lease "in effect" as one with a term within the range of predictability as to rental value.

However nebulous the concept of a long lease may be, it is not a fiction but an actual instrument. Nothing appears in the record to suggest that the rental agreed upon was other than a reasonable return upon the value of the demised property, fairly negotiated. At the time

the lease was executed, it is fair to assume the parties thought the annual rent reserved and rental value were the same. Without proof to the contrary only nominal damages would be allowed the claimant. And, until something else is shown, courts are entirely justified in assuming that for the long years ahead the rent and the rental value are the same.[9] As a consequence, evidence of rental value smaller in amount than the rent reserved for a term shorter than the remainder of the lease is, in the absence of testimony as to other years, proof of the damages for the years covered. Since the presumption is that the rent and rental value for the remainder of the term are the same, the damage proven is to be considered as all the damage for the rejection of the lease.

*Second.* The petitioner also contends that the circuit court of appeals erred in setting aside the district court's decree refusing the claim on the ground that the evidence, detailed above, did not satisfy the mind as to the amount of damages. In the view of the trial court, there was a failure of proof. The correctness of the judgment of the appellate court in directing an allowance of the claim depends not upon its power, which we think is clear,[10] but upon its conclusion as to the persuasive character of the evidence, whether it is too speculative, whether it showed the damage to reasonable certainty. As there was no significant dispute over the facts proven, the conclusion as to the sufficiency of the evidence was for the reviewing court. We deal, in this review, with the method of the proof of damages, not the measure. Narrowed even more, the issue is whether the evidence offered justifies an award, whether the quantum of proof produced forms an adequate basis for a reasoned judgment.

---

[9] 2 Sedgwick, Damages, 9th Ed., § 610.

[10] Cf. *Ridings* v. *Johnson*, 128 U. S. 212, 218; *United States* v. *Rio Grande Irrigation Co.*, 184 U. S. 416, 423.

Future rental value cannot be susceptible of precise proof. As it depends, so far as the amount of damages for breach of a lease is concerned, upon future profits, it partakes of the nature of loss of earning capacity or of credit. To require proof of rental value approaching mathematical certitude would bar a recovery for an actual injury suffered. All that can be done is to place before the court such facts and circumstances as are available to enable an estimate to be made based upon judgment and not guesswork.[11] Every anticipatory breach of an obligation, and every appraisal of damage involving the present value of property involves a prediction as to what will occur in the future. Present market value of property is but the resultant of the prediction of many minds as to the usability of property and probable financial returns from that use, projected into the future as far as reasonable, intelligent men can foresee the future.

The proof of future profits by the evidence of past profits in an established business gives a reasonable basis for a conclusion.[12] It is true that this business changed from trolley to bus within two years of the end of the base period and that management changed from lessee to

---

[11] *Story Parchment Co. v. Paterson Co.*, 282 U. S. 555, 563; *Eastman Kodak Co. v. Southern Photo Co.*, 273 U. S. 359, 379; *Eckington & S. H. Ry. Co. v. McDevitt*, 191 U. S. 103, 112, 113; cf. *dicta* in *United States v. Behan*, 110 U. S. 338, 344; see Restatement of Contracts, § 331, particularly comment (a); *United States Trust Co. v. O'Brien*, 143 N. Y. 284, 290; 38 N. E. 266; *Ball v. Pardy Construction Co.*, 108 Conn. 549, 551; 143 A. 855; *Commonwealth Trust Co. v. Hachmeister Lind Co.*, 320 Pa. 233; 181 A. 787; 1 Sedgwick, Damages, 9th Ed., § 170 (a) *et seq.*; 1 Sutherland, Damages, 4th Ed., § 67.

[12] 5 Williston, Contracts, Rev. Ed. § 1346 A; *Bagley v. Smith*, 10 N. Y. 489, 498; *Dickinson v. Hart*, 142 N. Y. 183, 188; 36 N. E. 801; *Macan v. Scandinavia Belting Co.*, 264 Pa. 384, 392; 107 A. 750; *Commonwealth Trust Co. v. Hachmeister Lind Co.*, 320 Pa. 233, 242; 181 A. 787.

lessor but we think the fact of transportation in the same communities for more than a quarter of a century sufficed to give the operation the classification of an established business. Here different methods of operation or normal changes in the executive staffs do not seem sufficient to interfere with the probative value of past experience. Franchises and property of street railways and bus lines are difficult of appraisal. Nothing is more indicative of their value for lease or sale of the fee than past earnings. If we were to adopt the view that the interest conveyed is a defeasible fee,[13] its defeasance dependent upon a condition such as nonpayment of annual instalments of the purchase price, the same difficulties exist. The unknown subtrahend would be the present value, instead of the rental value. Evidence of value would be made up of the items of proof. One of the most important of these, in the case of property such as here involved, would be past earnings.

This Court has sustained recoveries for future profits over four years based solely upon evidence of the profits of an established business for the past four years. We there approved an instruction which told the jury, "Damages are not rendered uncertain because they cannot be calculated with absolute exactness. It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate." [14]

The ways compensatory damages may be proven are many. The injured party is not to be barred from a fair recovery by impossible requirements. The wrongdoer should not be mulcted, neither should he be permitted to escape under cover of a demand for nonexistent

_____

_____ove Camp Meeting Assn. v. Reeves, 79 N. J. L. 334, 335 .: 782.

[14] Eastman Kodak Co. v. Southern Photo Co., 273 U. S. 359, 379.

certainty.[15] Damages for breach of the lease were in contemplation of the parties when the contract was made.[16] The lease contained a covenant of reëntry without prejudice to right of action for arrears of rent or breach of covenants. The provision in the Bankruptcy Act gives a new right of recovery in bankruptcy only. This right of recovery is an unsecured claim of the character of a claim for a deficiency above the value of inadequate collateral.

Certainty in the fact of damage is essential. Certainty as to the amount goes no further than to require a basis for a reasoned conclusion.[17] The certainty of the evidence as to damages for rejection of a lease depends upon the same tests as in other situations where damages are difficult of proof. This Court, recently, in an infringement case [18] was required to appraise the value of opinion evidence as to the part of profits attributable to the use of a pirated play, an obviously elusive fact. No expert thought any greater percentage than ten should be attributed to the play. The lower court allowed twenty so that the award might by no possibility be too small. We approved because "what is required is not mathematical exactness but only a reasonable approximation. That, after all, is a matter of judgment . . ."

Satisfactory evidence was presented for the three years of actual operation of the properties covered by this lease. We think that prior earnings of the same property over fourteen years was a fair base to use to project the estimate of the earnings for the eight years of future

---

[15] Story Parchment Co. v. Paterson Co., 282 U. S. 555, 564, 565; Eastman Kodak Co. v. Southern Photo Co., 273 U. S. 359, 379; Hetzel v. Baltimore & Ohio R. Co., 169 U. S. 26, 37, 38.

[16] Hadley v. Baxendale, 9 Exch. 341.

[17] Story Parchment Co. v. Paterson Co., 282 U. S. 555, 562, 563; 1 Sedgwick, Damages, 9th Ed., § 170; United States Trust Co. v. O'Brien, 143 N. Y. 284, 289; 38 N. E. 266.

[18] Sheldon v. Metro-Goldwyn Corp., 309 U. S. 390, 406–408.

operation. The failure to produce further evidence, either through experts or transportation surveys, was not fatal to respondent's case, even though such evidence is admissible. We see no reason to disagree with the conclusion of the circuit court of appeals that under the evidence presented the damages for eight years might be predicted with a "fair degree of certainty."

*Affirmed.*

MR. JUSTICE FRANKFURTER, dissenting:

On January 3, 1939, this Court unanimously decided that the "actual damage or injury" caused the lessor through the disaffirmance by the trustees of the New Haven of the lease now in controversy was a provable claim. *Connecticut Ry.* v. *Palmer*, 305 U. S. 493. If Congress had intended to rule out the legal provability of a claim for damages arising through the disaffirmance of what remains of a 999-year lease it could easily have done so, instead of providing for proof of the damages flowing from the termination of such an unexpired lease. And if, upon the prior consideration of the status of this very lease, this Court had intended to rule that loss due to the disaffirmance of the unexpired term of 969 years is in the nature of things beyond rational proof, it surely would not have taken twelve pages to avoid saying so. Both Congress and this Court have thus sponsored the conviction that proof of some damage is not outside the adjudicatory process.

But what is to be assessed is the value of a terminated long-term lease and not the value of an included short-term. Therefore, neither the decision of the district court nor that of the circuit court of appeals in reversing it seems to me satisfactory. Although the two courts reached contradictory conclusions, their views appear to suffer from the same intrinsic vice. Starting with man's inability to pierce into a future of 969 years, both courts

deemed the present value of a lease running for such a period beyond calculable forecast. Therefore, Judge Hincks said in effect, when an end is put to the benefits accruing from such a lease, the loss to the lessor cannot be translated into dollars and cents. Judge Patterson, on the other hand, treated the lease as though it were a lease for an ascertainable, included short term, and deemed eleven years as the limit for sure judgment. Since the lease is not a short-term lease, it is, according to the district court, nothing for purpose of giving rise to damages. Since the lease is for too long a term, we will snip off an included short term as though it were a short-term lease, concluded the circuit court of appeals.

Both these dispositions result in avoidance, through over-simplification, of an extremely complicated problem which Congress has put up to the courts. Since neither the district court nor the circuit court of appeals applied the directions of this Court in *Connecticut Ry.* v. *Palmer, supra,* however difficult and subtle they may have been, neither disposition should stand. The case should be sent back to the district court where an opportunity should be given to make proofs appropriate to the nature of the problem to be solved, namely, ascertainment on a tough business basis of the damage that sprang into existence from the disaffirmance of the remaining 969-year term rather than from the disaffirmance of a supposed 11-year lease.

MR. JUSTICE DOUGLAS, dissenting:

MR. JUSTICE BLACK and I are of the view that respondent's proof was wholly inadequate to establish under § 77 (b) of the Bankruptcy Act the extent of its "actual damage or injury" as a result of the rejection of this lease, since the evidence offered failed to show what was "the present value of the rent reserved less the present rental

value of the remainder of the term"—the measure of damages established for this very claim in *Connecticut Railway & Lighting Co.* v. *Palmer,* 305 U. S. 493, 504.

We are dealing here with an unexpired term of 969 years. But the claim allowed is for a term which does not cover that span. It covers only an unexpired term of 11 years. For the reasons stated in *Kuehner* v. *Irving Trust Co.,* 299 U. S. 445, we think that if Congress had provided in § 77 that lessors should not be allowed to prove for damages in excess of an 11 year unexpired term, the limitation would be constitutional. Such legislation would have a firm constitutional basis in the bankruptcy power. But the making of such a limitation is a legislative, not a judicial, function. In view of the wording of § 77(b) we do not think this Court has the power to substitute the value of one property interest for the value of an entirely different one. Sec. 77(b) says that "actual damage or injury" shall be allowed. Yet it would be a mere coincidence if "actual damage or injury" for an 11 year term were the "actual damage or injury" for a 969 year term. Hence the District Court correctly refused to substitute any lesser term for the one here in question. No authority, we believe, can be found which can justify speculating a claimant into a loss through the easy assumption that he had a property interest which in fact he did not have.

There is a related objection to the allowance of this claim. It is plain that any attempted computation of future rental values of this property for the next 969 years would at best be a mere flight "into the realm of pure speculation" which this Court condemned when the case was here before. 305 U. S. 493, 505. From our point in history 969 years hence is perpetuity. It covers a longer span that from 1941 A. D. to 500 years before Columbus discovered America. To project past earnings of a present enterprise through such vicissitudes of time

would be to assume a static quality in society which even a decade of history would disprove. This was tacitly admitted by respondent before the District Court. The Circuit Court of Appeals recognized the impossibility of such a task. It therefore produced a substitute method. It computed the annual estimated values for each future year for as long a period as it could venture an estimate. That, however, misses the nature of the problem. Under the rule laid down by this Court, the great unknown in such cases is the "present rental value of the remainder of the term." The actual damage, if any, to the lessor is suffered all at once. For § 77, like former § 77B (*City Bank Farmers Trust Co.* v. *Irving Trust Co.,* 299 U. S. 433, 440) extends the doctrine of anticipatory breach (*Central Trust Co.* v. *Chicago Auditorium Assn.,* 240 U. S. 581) to leases of realty. Where there is such a breach "compensation therefor may be recovered at once for the whole loss, though the consequence be a continuing one, if the future damage resulting therefrom can be ascertained with certainty." *James* v. *Kibler's Adm'r,* 94 Va. 165, 173; 26 S. E. 417. The liability of the lessee for damages is single, not multiple. But § 77 (b), unlike some state rules (*Hermitage Co.* v. *Levine,* 248 N. Y. 333; 162 N. E. 97), calls for an ascertainment of the full deficiency not at the end of the term but on rejection of the lease.

Lessors claiming damages under § 77 (b), like claimants in ordinary bankruptcy proceedings (*Rasmussen* v. *Gresly,* 77 F. 2d 252, 254; *Whitney* v. *Dresser,* 200 U. S. 532), carry the burden of establishing the existence and amount of the claim. Their proof must satisfy the "usual rules as to the measure of damages"; they "must show damages to reasonable certainty." *Connecticut Railway & Lighting Co.* v. *Palmer, supra,* at p. 505. While absolute certainty is not required where a claim for damages is sought (*Hetzel* v. *Baltimore & Ohio R.*

*Co.,* 169 U. S. 26, 37), the evidence must be sufficient for the exercise of an informed judgment as to the amount. Where the existence or extent of the damage is a matter of mere conjecture or guesswork, the claim will be denied. *Pennsylvania Steel Co.* v. *New York City Ry. Co.,* 198 F. 721, 759. When the instant case was here before, the *Pennsylvania Steel Co.* case was cited for the statement, "The difficulties of proof are well recognized." 305 U. S. at 504. In the *Pennsylvania Steel Co.* case damages for breach of a lease with an unexpired term of 995 years were disallowed in receivership proceedings, the court saying (p. 759): "Who could foretell the results of operation by the owner, the growth of the city, improvements in motive power, or reductions in cost? Who could foresee whether a lease could be made to another railroad company or the terms thereof? . . . The claim for such damages was properly disallowed because it was uncertain in amount and there was no method of making it certain."

Those observations are peculiarly apt when applied to the facts in this record. Here there is no evidence as to market value. Cf. *Metropolitan Bldg. Co.* v. *King County,* 62 Wash. 409; 113 P. 1114. Nor has there been any fair, *bona fide* reletting. Cf. *James* v. *Kibler's Adm'r, supra.* In this record there is no substantial evidence as to value except estimated past earnings. Useful as past-earnings may be in certain situations where a short and limited forecast is being made (*Eastman Kodak Co.* v. *Southern Photo Materials Co.,* 273 U. S. 359) they are indeed treacherous when used as the sole basis for appraisal.[1] The value of a going enterprise is dependent on earnings. A forecast of earnings must take into consideration the numerous and variable fac-.

---

[1] 1 Bonbright, Valuation of Property, c. XII.

tors which affect income-producing capacity.[2] Those factors vary from business to business. Here we are dealing with passenger transportation by bus. Certainly any forecast of earnings should embrace an expert study of problems peculiar to this field—the territory served, population trends, competitive conditions, the record of companies in comparable territory, and the like. Any estimate which wholly ignores such factors and relies entirely on past earnings ignores the very conditions which alone can impeach or sustain the credibility of past earnings as a measure of future earnings.[3] Cf. *Hammond Lumber Co.* v. *County of Los Angeles,* 104 Cal. App. 235; 285 P. 896.

The problem of determining the present value of this unexpired term of 969 years is not different from the problem of valuing a fee interest.

The fact that this instrument is called a "lease" is no barrier to such an appraisal. For, as stated by this Court in *Union Pacific Ry. Co.* v. *Chicago, R. I. & P. Ry. Co.,* 163 U. S. 564, 582, where a so-called "lease" was construed: "What it was styled by the parties does not determine its character or their legal relations." The court has not only the power but the duty to determine its real character by consideration of all its intrinsic and extrinsic characteristics. *Id.,* at p. 582. A lease renewable forever or a lease in perpetuity (as here) is the equivalent of a fee interest. It has been so treated in

---

[2] Bonbright, *op. cit., supra,* note 1; Dewing, Financial Policy of Corporations, pp. 319 *et seq.;* Graham & Dodd, Security Analysis, c. I; Kniskern, Real Estate Appraisal & Valuation, pp. 235 *et seq.;* Mason, The Street Railway in Massachusetts, c. 6; McMichael, Long & Short Term Leaseholds.

[3] In the Matter of Breeze Corporations, Inc., 3 S. E. C. D. & R. 709; In the Matter of Mining & Development Corp., 1 S. E. C. D. & R. 786.

Connecticut, where the instant lease was made, for purposes of taxation. *Connecticut Spiritualist Camp-Meeting Assn.* v. *Town of East Lyme,* 54 Conn. 152, 155–156; 5 A. 849. As stated in *Piper* v. *Meredith,* 83 N. H. 107, 110; 139 A. 294, "it is well settled law that a perpetual lease upon condition conveys to the lessee a determinable or base fee." Or as stated in *Whittelsey* v. *Porter,* 82 Conn. 95, 102, a 999 year lease is "practically a fee defeasible only upon failure to perform certain conditions." And see *Montgomery* v. *Town of Branford,* 107 Conn. 697, 702; 142 A. 574; *Wells* v. *Savannah,* 181 U. S. 531; *Leary* v. *Jersey City,* 248 U. S. 328; *Trustees of Elmira* v. *Dunn,* 22 Barb. 402. The mere reversionary interest of the lessor in a perpetual lease is so remote and speculative as to defy valuation. See *Chicago West Division Ry. Co.* v. *Metropolitan West Side Elevated R. Co.,* 152 Ill. 519, 524–526; 38 N. E. 736. As stated by the Supreme Court of Errors of Connecticut, the reversion under a 999 year lease becomes a "mere imaginary estate." *Brainard* v. *Town of Colchester,* 31 Conn. 407, 411. Whatever may be the precise catalogue of all rights of the lessee (*Goodwin* v. *Goodwin,* 33 Conn. 314; *Dennis Appeal,* 72 Conn. 369; 44 A. 545) and whatever may have been the business and legal reasons for use of the 999 year lease rather than the acquisition of the assets by merger, consolidation or otherwise,[4] it is plain that for all practical purposes the lessee retains such full control and such complete enjoyment of the property that he may properly be treated as the owner. Such a lease is in effect "a practical sale." *Lord* v. *Town of Litchfield,* 36 Conn. 116, 126.

---

[4] McMichael, *op. cit., supra,* note 2, c. I; Meck & Masten, Railroad Leases and Reorganization, 49 Yale L. J. 626; Niehuss & Fisher, Problems of Long Term Leases, 2 Mich. Bus. Studies, Pamphlet 8; The Long Term Ground Lease: A Survey, 48 Yale L. J. 1400.

Thus the problem of determining the present value of the unexpired term of 969 years is no different from determining the value of land in an action for breach of a contract to purchase it. There the rule is that the vendor may recover compensation for his actual loss measured by the difference between the price he was to receive [5] (less the amount paid) and the value of the land at the time of breach. 3 Sedgwick on Damages (9th ed.) §§ 1023 et seq; In re Marshall's Garage, 63 F. 2d 759. In making that valuation the conventional rules governing appraisals of the worth of fee interests would be applicable. 1 Bonbright, Valuation of Property, chs. XIII, XIV.

In sum, whatever rule of damages is applied to this situation, the proof submitted is not adequate for appraisal of the property interest here involved without violating the well-established rule against allowance of speculative damages, announced by this Court on the first appeal. No reasons of policy have been suggested which justify deviation from those well-established principles. The fact that the "lease" extends over a period of almost ten centuries accentuates the necessity for close adherence to the rule, not for its relaxation.

---

[5] Future payments would of course be reduced to present worth. *Bondy v. Harvey*, 218 App. Div. 126; 217 N. Y. S. 877.