In the Matter of The **NEW YORK, NEW HAVEN & HARTFORD RAILROAD COMPANY, Debtor.**

**Charles W. Mulcahy, as sole surviving Trustee of the property of Boston and Providence Railroad Corporation, Appellant,**

**Richard Joyce Smith, William J. Kirk and Harry W. Dorigan, Trustees of the New York, New Haven and Hartford Railroad Company, Intervenors,**

**United States of America, Intervenor.**

**In Proceedings for the Reorganization of a Railroad.**

**No. 1, Docket 17680.**

United States Court of Appeals Second Circuit.

Argued Jan. 3, 1962.

Decided Jan. 16, 1962.

Erwin N. Griswold, Cambridge, Mass., Oliver R. Waite, Paul E. Troy, Boston, Mass., for appellant.

James Garfield, James C. Heigham, Choate, Hall & Stewart, Boston, Mass., for Reorganization Trustees of the New York, New Haven and Hartford Railroad Company, currently in reorganization, intervenors.

William H. Orrick, Jr., Asst. Atty. Gen., Marvin C. Taylor, Spec. Litigation Counsel, Dept. of Justice, Washington, D. C., for United States, intervenor.

Before WATERMAN, KAUFMAN and MARSHALL, Circuit Judges.

WATERMAN, Circuit Judge.

From 1935 to 1947 the New York, New Haven and Hartford Railroad Company (the New Haven) was in reorganization under Section 77 of the Bankruptcy Act, as amended, 11 U.S.C.A. § 205. During that long reorganization the United States District Court for the District of Connecticut issued an order on January 13, 1940, in which, among

other matters, it disallowed the claim of the Trustees of the Boston and Providence Railroad Corporation[1] for damages for loss of future rentals for the remainder of the term of a lease rejected on June 1, 1936 by the New Haven trustees and on July 19, 1938 by the trustees of Old Colony Railroad Company; determined that June 3, 1936, the date of the bankruptcy of the Old Colony Railroad,[2] rather than a July 1, 1938 date when certain debentures issued by the Boston and Providence matured, was the proper date for taking the market value of the stock of the Boston and Providence contained in a sinking fund which the Old Colony had been required to set up to provide for the payment of those debentures; and refused to allow the direct claim of the Boston and Providence Trustees against the New Haven for breach of a covenant to return rolling stock.

The Trustees of the Boston and Providence timely appealed these determinations to our court where the appeal soon became the oldest pending case. It remained dormant until this term because the parties had hoped that when reorganization plans of the two railroads were consummated the appeal would become moot. The New Haven plan was approved by the District Court below on March 6, 1944 and consummated on September 11, 1947; but certain of its provisions relative to acquisition of the Boston and Providence have never been carried out, the District Court in the consummation order reserving jurisdiction over this subject. The Boston and Providence plan was approved by the

1. In 1938 the Boston and Providence was petitioned into a reorganization under Section 77 in the U. S. District Court for the District of Massachusetts.

2. In 1888 the Boston and Providence leased its lines for a term of 99 years from April 1, 1888 to the Old Colony Railroad Company. In 1893 the Old Colony, in turn, leased all of its lines to the New Haven under a 99-year lease, which included an assignment to, and assumption by, the New Haven, of the 1888 lease made by the Boston and Providence to

the Old Colony. On June 1, 1936, the Trustees of the New Haven rejected the New Haven's lease of the Old Colony, and on June 3, 1936 Old Colony filed in the U. S. District Court for Connecticut, where the New Haven's petition was pending, its own petition for reorganization as a subsidiary debtor. The petition was approved that day and the Reorganization Trustees of the New Haven were appointed Trustees of Old Colony, also; and thereafter, as such trustees, on July 19, 1938 they rejected the Boston and Providence lease to Old Colony.

U. S. District Court for the District of Massachusetts on September 11, 1956 but no consummation order has ever been entered. In fact the Interstate Commerce Commission adjourned all hearings thereon in 1960 after the New Haven placed on the I.C.C. records its statement that it could not acquire the Boston and Providence at any price.

In this state of affairs the reorganized New Haven filed on July 7, 1961 in the U. S. District Court for Connecticut a petition for a new reorganization. The petition was allowed that day and new reorganization trustees were subsequently appointed. Therefore, as it became apparent that the New Haven could not carry out the provisions of the former plan relating to the Boston and Providence the surviving trustee of the latter reactivated this twenty-year old appeal. The present trustees in the current New Haven reorganization proceeding sought and received leave from us to intervene in opposition and moved that we vacate the January 13, 1940 order below and remand the case to the District Court without either affirming or reversing any of the 1940 determinations.

The United States, never heretofore a party to the appellate proceedings, also sought and received leave to intervene, file briefs and argue as a party. It set forth that it should be a party because the resolution of the problems of the New Haven was of great public interest and because the Government was a multi-million dollar creditor of the railroad. It took the position that the pending appeal should be dismissed. It was the Government's belief that, irrespective of any action we might take on the issues this outdated appeal had raised twenty years ago, the facts now clearly indicate that the Boston and Providence can never recover any more from the New Haven than was awarded under the January 13, 1940 order of the district court.

One year after that district court order, the United States Supreme Court by its decision in Palmer et al. as Trustees of the New York, New Haven & Hartford R. R. Co. and Old Colony R. R. Co. v. Connecticut Railway & Lighting Co., 311 U.S. 544, 61 S.Ct. 379, 85 L.Ed. 336, decided January 6, 1941, demonstrated that the district court order of January 13, 1940 that had disallowed the claim of the appellant for damages for the breach of the 99-year lease and for the loss of future rent provided for therein must be reversed.

Upon the argument of this appeal the Trustees of the two railroads submitted to us the following stipulation:

"[I]t is stipulated between counsel for The Appellants and for The Reorganization Trustees of the New York, New Haven & Hartford R. Co. that the Court may enter an order as follows:

"1. That the judgment below denying the claim of the appellants for future rent is reversed, and the case is remanded for further proceedings consistent with Palmer v. Connecticut Railway & Lighting Co., 311 U.S. 544 [61 S.Ct. 379, 85 L.Ed 336]. In such further proceedings, no decision shall be deemed to have been made by this Court, either for the appellants, or for the Reorganization Trustees of the New Haven, with respect to damages for deficits or with respect to administration claims.

"2. That the judgment for rolling stock in the aggregate amount of $871,234.35 should be entered against the New Haven estate if that has not already been done.
"(signed) Erwin N. Griswold
"(signed) Oliver R. Waite
 Counsel for Appellants
"(signed) James Garfield
 Counsel for Reorganization Trustees
"January 3, 1962"

By this agreement the Railroad Trustees, subject to our approval, disposed of two of the three issues before us on appeal. The Government, however,

refused to agree to the stipulation. It asserted that the appeal should be dismissed because a reversal and remand would gain the appellant very little financially and would delay the present reorganization of the New Haven. We do not agree with the Government. We cannot predict how valuable the appellant's right will become. Nor are we sure that a redetermination upon remand of the amount of the claim for future rents will delay the current reorganization of the New Haven unduly. It is conceivable that the reorganization may take a very long time. In the light of these uncertainties we cannot take away the appellant's right. We accept the stipulation entered into by the Trustees of the New Haven and the surviving Trustee of the Boston and Providence.

 One issue not touched by the stipulation remains for decision—the correct date for determining the market value of the Boston and Providence corporate stock in the sinking fund. As was mentioned above, the district court decided that the date of the bankruptcy of the Old Colony Railroad, June 3, 1936, was the appropriate date for determining the value of the Boston and Providence corporate stock so held. The Boston and Providence Trustee contends that the date for determining the stock's market value should be July 1, 1938, the date of the maturity of the debentures for the payment of which the sinking fund was created. We agree with the

Trustee of the Boston and Providence. The bankruptcy of the Old Colony was an anticipatory breach of its duty to provide payment of the debentures. Central Trust Co. of Illinois v. Chicago Auditorium Assoc., 240 U.S. 581, 36 S. Ct. 412, 60 L.Ed. 811 (1916). But under the law of contracts, even though a breach precedes the time for performance, damages for the breach are to be measured as of the time when the party in default should have performed. Restatement, Contracts § 338 (1932); In re Marshall's Garage, 63 F.2d 759, 762–63 (2 Cir.1933). The date for performance in this case was the date of the maturity of the debentures—July 1, 1938. We do not believe that any language in the covenant dealing with the sinking fund was intended to change the ordinary method by which damages are computable.[3]

 The district court was correct in discounting to present value the amount it determined to be the damages relevant to the sinking fund, and it should likewise discount to present value any new figures it arrives at for this item after remand.

Therefore, the order of the district court is reversed and the case remanded for proceedings by the district court in accordance with the approved stipulation set forth above and with directions to determine the market value of the Boston and Providence corporate stock in the sinking fund as of July 1, 1938.

3. The pertinent language in the covenant is as follows:

Eleventh. * * * The lessor shall issue bonds for periods not exceeding the longest allowed by law, * * * for such sums as may be necessary to fund all its outstanding liabilities which are not thus paid, * * * which bonds shall, at the request of the lessee, be extended as they mature for periods not exceeding the unexpired term of this lease on the most favorable terms then practicable.

To provide for the payment of the net indebtedness of the lessor as thus ascertained and funded, the lessee shall * * establish a sinking fund in the hands of three trustees * * * and shall make such annual or more frequent payments thereto as may be necessary with interest at four percent per annum, compounded semi-annually, to cause it to meet said indebtedness during the term of this lease. And the lessee hereby agrees that such sinking fund shall be adequate to pay, and shall pay, said indebtedness at its maturity, as thus funded and extended, and that it will make up any deficiency therein.