## CIRCUIT COURT OF CAROLINE COUNTY

Cleve Marsh Hunt Club,
a Virginia general partnership,
a/k/a/ Cleve Marsh Associates,
and Cleve Marsh Preserve, Inc.

v.

Genevieve P. Davis

March 29, 1990

By JUDGE JOSEPH E. SPRUILL, JR.

The partners of Cleve Marsh Hunt Club have asked the Court for a declaration (1) confirming an easement over property of defendant, Genevieve P. Davis, to a landing from which they can cross the Rappahannock River to Cleve Marsh; and (2) confirming the partners' right to exercise an option to renew a lease with Mrs. Davis for a five-year period and establishing a rental for such period.

In claiming their entitlement to the easement, the partners rely on an express *ab initio* grant, and, failing that, on doctrines of estoppel, implication, and operation of law. They claim that the terms of the lease agreement provide for an enforceable five-year renewal option at "a mutually agreed rent."

Mrs. Davis maintains that none of the foregoing doctrines apply, but that, pursuant to the doctrine of merger, the relief requested must be denied. She claims the renewal option provision of the lease is unenforceable. By Special Plea she challenges the Court's authority in a Declaratory Judgment proceeding to grant the relief requested.

A lengthy hearing was held on December 20, 1989, following which the parties have submitted comprehensive briefs.

The evidence, which was essentially without conflict, is found to be substantially as follows.

E. Conway Davis and Genevieve P. Davis, husband and wife, purchased a parcel of marshland, known as "Cleve Marsh," consisting of 360 acres, more or less, in King George County, Virginia, in May, 1966, for a price between $25,000.00 and $35,000.00. The deed of conveyance contained a description of a right of way in King George County leading to the marsh. This marsh fronted along the eastern shoreline of the Rappahannock River as it flows north and south. Mr. and Mrs. Davis lived in Caroline County, along the western shoreline of the Rappahannock River, almost directly across from Cleve Marsh. After acquiring the marsh, Conway invited his friends and business associates from time to time to hunt duck and geese in this marsh. These friends and business associates are for the most part presently members of a partnership known as Cleve Marsh Hunt Club.

In February, 1978, Mr. and Mrs. Davis contracted to sell to Cleve Marsh Hunt Club, a partnership, a 10/11th undivided interest in Cleve Marsh, consisting of "738 acres" more or less, for the sum of $250,000.00. (The acreage variation was not mentioned by either party and is apparently of no consequence in this litigation.) The sellers retained an undivided 1/11th interest in the property. The contract of sale contained the following provision:

It is further agreed between the parties that the parties of the first part (Davis) hereby give the parties of the second part (Cleve Marsh Hunt Club) rights of way to existing landings from state highway through Davis Farm property in Caroline County of Conway Davis and Genevieve Davis and their heirs or assigns who may later have an interest in this farm. Parties of the first part and their successors in title hereby reserve the right to change the location of rights of ways by giving 90 days' prior written notice to parties of second part. The parties

of the second part shall have the right to maintain said right of way in good condition for the use of ingress and egress into aforesaid marshes.

On the same day, the same parties signed the lease wherein Mr. and Mrs. Davis leased to the partnership property known as "the Patterson Farm House, the surrounding yard, and the adjacent buildings and the marshes on the Rappahannock River known as the upper, middle, and lower marshes, together with the right of way for ingress and egress from state highway to Patterson Farm House and from farm house to Cleve Marsh, upper marsh, middle marsh, and lower marsh." This lease was for a ten-year period beginning February 24, 1978, with the "option of one additional five-year term at a mutually-agreed rent." The Davis Farm property, the Patterson Farm House, and the upper, middle, and lower marshes referred to in the contract and lease are contiguous parcels located along the western boundary of the Rappahannock River in Caroline County. On May 30, 1978, Mr. and Mrs. Davis executed a deed conveying the Cleve Marsh property to Cleve Marsh Associates. This deed described the marsh and the right of way to Cleve Marsh in King George County as set forth in the deed of 1966 to Mr. and Mrs. Davis. The right of way in Carolina County provided for in the contract of sale was not mentioned in this deed.

Commencing with the acquisition of Cleve Marsh by Conway Davis in 1966, access to it by Mr. Davis and his hunting companions, and later by partners of Cleve Marsh Associates, has been obtained invariably and without exception from the landing on Davis Farm. This landing was reached by a roadway which extended from the public road through the property of Mr. and Mrs. Davis. The members of Cleve Marsh Associates, including Conway Davis, were close personal friends who had great affection and respect for each other.

In the discussion between Davis and Cleve Marsh Associates for the purchase of Cleve Marsh, there was no discussion about the right of way. (Here, there may be a conflict in the interpretation of the evidence. In her brief, defendant states that her accountant testified that the club was aware that the Caroline County easement

was intended to be temporary in nature and to exist only for the ten-year period of the lease. However, our notes indicate that Mr. Tingler testified there was no discussion about the right of way during deed negotiations.)

Mr. Davis died in 1983, and his interest in these properties passed to his wife, Genevieve. His interest as a partner in Cleve Marsh Associates is now held by his son-in-law, Keith Upshaw. The partners continued using the Caroline access to Cleve Marsh until 1988 when they approached Mrs. Davis to exercise their option to renew the lease of the Patterson Farm House and its marshes. At this time, Mrs. Davis informed them that she would not renew the lease and that the partners would no longer be allowed access through the Davis Farm to the landing from which they could cross the river to Cleve Marsh. For the first time, the partners learned that their right to the access through Davis Farm was disputed, as was their right to exercise the renewal option of the lease. The partners undertook to locate the King George access at this point. Assuming they correctly located it, which is problematical, they found it to be neither passable, convenient, practical, suitable, nor safe for use by anyone attempting to hunt from Cleve Marsh. The distance from the point where the King George access presumably intersects the Rappahannock River to the hunting area of Cleve Marsh is approximately three miles by water. At this point, there is a steep bank which makes it impossible to launch a boat.

Concluding that without the access provided for in the contract, their investment in Cleve Marsh was useless, the partners instituted this action.

### Jurisdiction

Although not addressed in her brief, we assume defendant has not abandoned her Special Plea that the Court is without authority or jurisdiction in a declaratory judgment action to establish an easement or construe a lease.

Section 8.01-184 gives the court the power to make binding adjudications in controversies involving the interpretation of deeds and other instruments of writing. The purpose of a declaratory judgment action is to afford

relief from uncertainty and insecurity without requiring an invasion of rights asserted by another. We deem this present contest to be precisely the kind of controversy for which a declaratory judgment is appropriate, and accordingly, the Special Plea will be denied.

### Easement by Express Grant -- Merger

A contract of sale is usually an executory instrument wherein the parties bind themselves to complete the terms of sale at some future time. In the contract of sale between these parties dated February 24, 1978, Conway and Genevieve Davis did "hereby give" Cleve Marsh Hunt Club right of ways [sic] to existing landings. There is nothing executory about this language. It is a present grant, contingent only upon the execution of the "attached lease." The language is plain and susceptible to no other reasonable interpretation. Such an interpretation is consistent with the other provisions of the contract. The sellers (Davis) "agree to sell" 10/11 interest in Cleve Marsh upon terms as stated and "hereby give" the easement. The fact that the marsh was in one county and the easement was in another may explain this dichotomy. Whatever the reason, the easement was part and parcel of the marsh sale, and the intent of all parties, as expressed in the contract, is clear.

Mrs. Davis argues that the provisions of the contract were merged in the deed so that the purchasers' rights were solely those acquired as grantee under the deed. She quotes from *Woodson v. Smith*, 129 Va. 652 (1921):

> The deed must be regarded as the sole and final expression of the agreement between the parties as to every subject which it undertakes to deal with. All inconsistencies between the prior contract and the deed must be determined by the latter alone . . . .

Here, the deed for the King George marsh did not undertake to deal with the Caroline easement. Nor is there any inconsistency between the deed and the contract. In neither is there any indication that the purchasers were acquiring only one access. We conclude that the contract

contained an independent grant of the Caroline easement, that there is no inconsistency between the contract and the deed, and that therefore the doctrine of merger has no application here.

## Estoppel

The partners argue that even if there were no express grant, Mrs. Davis is precluded from denying the existence of the Caroline easement under principles of estoppel. The partners claim to have been induced to purchase the marsh by the right to use the "existing landings"; that they relief upon these representations and continued to use the Caroline access; and that to be now denied this access would be to render the marsh useless as to them.

Mrs. Davis counters with the proposition that estoppel is not applicable if it is shown that the Caroline access is not necessary to the enjoyment and value of the property. And even if the Caroline easement is indispensable, she argues, the partners' actual or constructive knowledge of the contents of the deed preclude their reliance on estoppel.

Under the traditional view, some misrepresentation of fact was necessary for the doctrine of estoppel to apply. Because of the difficulty courts had in defining "misrepresentation" in this context, a more modern view seems to have evolved under which fraud, bad faith, or an intent to deceive is not essential. "Estoppel may arise from acts or conduct calculated to impress upon the mind of another a belief in the existence of a certain state of facts." 7A Michie's Jurisprudence, *Estoppel*, § 19.

Witnesses for each side in this case testified that the only access to Cleve Marsh, at least since 1966, was from the landing on the Davis property. No witness testified that the King George access was ever used -- even once. Indeed, the uncontradicted testimony was that the King George access was useless for the purposes for which the partners acquired the marsh. When the contract between Conway Davis and the partners was negotiated, a specific provision was included for the access over the Davis farm. From that time, with full knowledge of Conway Davis, the partners continued to use the same access until his widow attempted to prevent it. No witness testified, and no

document introduced indicated, that the King George access was intended to be the only access available for the partners, or that their use of the Caroline access was at the sufferance of Conway Davis.

The partners of Cleve Marsh Hunt Club (a majority of whom testified) are men of excellent reputation who have achieved notable success in a variety of business and professional pursuits. It would be unlikely, if not inconceivable, that they would have paid $250,000.00 for the privilege of hunting Cleve Marsh for only ten years. They relied on the undisputed integrity of Conway Davis as well as the clear language of their contract with him. Mrs. Davis has known of the partners' use of the landing on her property for many years and was not heard to object until after her husband's death. Understandably, commotion from time to time near her home in the pre-dawn hours during hunting season may cause an inconvenience, which presumably the $250,000.00 should help to assuage.

The doctrine of estoppel should be applied cautiously and only when equity clearly requires it to be done. At its root is the notion that it must be consonant with common sense and justice. *Bower v. McCormick*, 64 Va. (23 Gratt.) 310 (1873). Here, it is beyond dispute that the partners relied, to their detriment, on the actual (the provision in the contract) or constructive (use of the Caroline access without objection for many years) representations made by Mr. and Mrs. Davis. The evidence has established that the Caroline access is essential for the reasonable enjoyment of Cleve Marsh. Mrs. Davis should be estopped from now denying the existence of the Caroline easement.

The defendant, on brief, argues that prior or contemporaneous oral or written statements are not admissible in evidence to alter the terms of the deed. This is a correct statement of the law, but it has no application here since there is no attempt to change the deed provisions. The fact that the deed refers only to a King George access does not require that there be no others.

Defendant makes the point that the contracting party was Cleve Marsh Hunt Club, a partnership; that the grantees in the deed were the 11 partners (including Conway Davis) trading as Cleve Marsh Associates; and that in the absence of a transfer of the contract rights from one to the other, Cleve Marsh Hunt Club is not the proper party to bring

this action to establish rights to a deed to which it was not a party. Suffice it to say that this action was brought by Cleve Marsh Hunt Club, also known as Cleve Marsh Associates; that every indication from the pleadings and the evidence is that the two entities are one and the same; and that the rights under the deed are not the primary issues addressed in this proceeding.

Finally, defendant objects to the testimony of club members concerning the intent of Conway Davis relative to the Caroline access because such testimony was not sufficiently corroborated. Defendant relies on § 8.01-397, the so-called "dead man's statute." All six of complainant's witnesses testified that they knew Conway Davis, and in this and all other respects, their testimony was consistent. We did not construe the tenor of their testimony as an attempt to prove the intent of Conway Davis but rather an effort to establish his actions over the years regarding the use of the Caroline access, as well as the non-use of the King George access. In any case, these witnesses corroborated each other sufficiently to satisfy the requirements of § 8.01-397.

For all of the foregoing reasons, we conclude that Cleve Marsh Hunt Club is entitled to an easement over the Davis farm property to the landing from which they can cross the Rappahannock River to the marsh.

## The Option

The partners assert that they have an enforceable option to renew the lease of February 24, 1978, for an additional five-year term at a mutually agreed rent. Mrs. Davis argues that this provision is invalid and unenforceable because of the uncertainty of the rent. Both parties agree that there is no Virginia authority precisely on point. The Court has found none. Authority is divided.

In every contract there exists an implied covenant of good faith and fair dealing. It would logically seem to follow that implicit in the phrase "at a mutually agreed rent" is the obligation of each party to the contract to negotiate fairly and in good faith to reach an agreed rent. Otherwise, this language in any agreement is illusory, and the party most likely to benefit is the party manifesting something less than good faith. It is also reasonable

to assume, as some courts have, that the option provision was a part of the consideration for the original term, and if the parties cannot agree on a reasonable rent, a court can set it for them.

Notwithstanding the logic of the foregoing, it does not seem to be law in this Commonwealth. We believe *Boisseau v. Fuller*, 96 Va. 45 (1898), cited by defendant, comes closest to controlling this issue. There, as here, a key element of the agreement was left to be negotiated at a later time. Our Supreme Court there found no enforceable agreement existed. Following this rationale, we conclude that the lease renewal option is unenforceable.